812 P.2d 1068

Vicki Lynne HOSKINSON Through the Personal Representative of Her Estate, Robert FLEMING; Deborah Jane Carlson, Individually and as Surviving Parent of Vicki Lynne Hoskinson and George Glenn Carlson, Jr., Husband and Wife; Stephanie Dawn Hoskinson by Her Next Friend and Mother, Deborah Jane Carlson; Carie Lynn Carlson by Her Next Friend and Father, George Glenn Carlson; Brian William Carlson by His Next Friends and Parents, Deborah Jane Carlson and George Glenn Carlson, Jr., Plaintiffs/Appellants,

v.

STATE OF CALIFORNIA; California Department of Corrections, a State Agency; California Board of Prison Terms; Robert McLean, Individually and in His Official Capacity, and Jane Doe McLean, Husband and Wife; Members of the California Board of Prison Terms, Individually and in Their Official Capacities; John Atwood and Alice Atwood, Husband and Wife; Frank Jarvis Atwood, a Single Man, Defendants/Appellees.

Rodney Paul HOSKINSON, Individually and as Surviving Parent of Vicki Lynne Hoskinson, Deceased, Plaintiffs/Appellants,

v.

STATE OF CALIFORNIA; California Department of Corrections, a State agency; California Board of Prison Terms; Robert McLean and Jane Doe McLean, Husband and Wife; Members of the California Board of Prison Terms, Individually and in Their Official Capacity; John Atwood and Alice Atwood, Husband and Wife, Defendants/Appellees.

No. 2 CA–CV 90–0048.

Court of Appeals of Arizona, Division 2, Department A.

Dec. 13, 1990.

Review Denied July 9, 1991.*

* Feldman, V.C.J., and Cameron, J., of the Supreme Court, voted to grant review. See 168 Ariz. 177, 812 P.2d 995.

Gonzales & Villarreal by Winton D. Woods and Elizabeth Peasley–Fimbres, Tucson, for plaintiffs/appellants Carlson and Hoskinson and the Estate of Vicki Lynne Hoskinson.

Haralson, Kinerk & Morey by Dale Haralson and Gregory G. Wasley, Tucson, for plaintiff/appellant Rodney Hoskinson.

Lewis and Roca by John P. Frank, Steven J. Labensky and Anne Rachel Aberbach, Phoenix, Bury, Moeller, Humphrey & O'Meara by David C. Bury, Tucson, for defendants/appellees State of Cal., its agencies and officers.

Slutes, Sakrison, Even, Grant & Pelander by A. John Pelander, Tucson, for defendants/appellees John and Alice Atwood.

## OPINION

LIVERMORE, Presiding Judge.

Frank Jarvis Atwood, a California parolee, kidnapped, sexually abused, and murdered Vicki Lynne Hoskinson in Tucson in September 1984. He was convicted of his crimes and sentenced to death. Vicki Lynne's parents brought this wrongful death suit against Atwood's parents, his parole officer, the State of California and various California agencies. The theory of the suit was that the defendants knew or reasonably should have known that Atwood was extraordinarily dangerous, that he had travelled through Arizona and might do so again, and that he was immi-

nently likely to engage in sexual violence against a child. Had the defendants exercised reasonable care, it is argued, Atwood's parole would have been terminated or he would have been controlled in some other way and the murder would not have occurred. Plaintiffs appeal from a dismissal of their complaint for lack of personal jurisdiction. They also appeal the trial court's denial of an award of fees, costs and sanctions under A.R.S. § 12–349 arising out of the defendants' improvident removal of this case to federal court. We affirm.

■ The plaintiffs assert three grounds for jurisdiction: specific jurisdiction, general jurisdiction, and jurisdiction by necessity. As to the first ground, relying on §§ 36[1] and 37[2] of the Restatement (Second) of Conflict of Laws (1971), plaintiffs contend that defendants are subject to jurisdiction in Arizona because, by their tortious failure to control Atwood in California, they either committed a tort in this state or engaged in conduct which they should reasonably have expected would cause an effect in this state. Even assuming the truth of plaintiffs' factual assertions, however, their jurisdictional conclusions fly in the face of the decisions of both the United States Supreme Court and the Arizona Supreme Court.

The core of plaintiffs' argument for specific jurisdiction is that the conduct of the defendants had the foreseeable consequence of injury in Arizona. As the Supreme Court has made abundantly clear, however, " 'foreseeability' alone has never been a sufficient benchmark for personal jurisdiction under the Due Process Clause." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 295, 100 S.Ct. 559, 566, 62 L.Ed.2d 490, 500 (1980). While foreseeability is not irrelevant, the Court explained that "the foreseeability that is critical to due process ... is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* at 297, 100 S.Ct. at 567, 62 L.Ed.2d at 501. Put another way, the defendant must have "fair warning that a particular activity may subject a person to the jurisdiction of a foreign sovereign." *Shaffer v. Heitner,* 433 U.S. 186, 218, 97 S.Ct. 2569, 2587, 53 L.Ed.2d 683, 706 (1977) (Stevens, J., concurring). This fair warning requirement is met

> if the defendant has "purposefully directed" his activities at residents of the forum, *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984), and the litigation results from alleged injuries that "arise out of or relate to" those activities, *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 2182, 85 L.Ed.2d 528, 541 (1985). As Justice O'Connor wrote in *Asahi Metal Industry Co., Ltd v. Superior Court of California, Solano County,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92, 104 (1987), "[t]he 'substantial connection' ... between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*" (Citation omitted; emphasis original.)

■ As our supreme court noted in *Batton v. Tennessee Farmers Mut. Ins. Co.,* 153 Ariz. 268, 273, 736 P.2d 2, 7 (1987), "if a defendant purposefully directs its activities at a particular forum, and the effects of its activities are reasonably foreseeable, jurisdiction is proper because the defendant can reasonably anticipate being called to account for its own actions." As this statement implies, however, and as the supreme

---

1. Section 36 provides in pertinent part:
   (1) A state has power to exercise judicial jurisdiction over an individual who has done, or has caused to be done, an act in the state with respect to any cause of action in tort arising from the act.

2. Section 37 provides:

> A state has power to exercise judicial jurisdiction over an individual who causes effects in the state by an act done elsewhere with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

court has reiterated, foreseeability of the effects of one's conduct is not alone sufficient.[3] The defendant must also have *purposefully* directed his conduct or activities at the forum state. In the present case, even assuming that the defendants should have foreseen or did foresee that Atwood would travel to Arizona and sexually assault a child here, there has been no showing of any kind that the defendants' conduct with respect to Atwood was in any way purposefully directed toward Arizona. Accordingly, the assertion of specific jurisdiction in Arizona would violate due process.[4]

■ Plaintiffs seek to avoid this result by arguing as to California that it is not a person within the meaning of the Fourteenth Amendment and is therefore not entitled to due process. Accordingly, they argue, the cases requiring minimum contacts for purposes of acquiring jurisdiction are simply inapposite. For this proposition, they cite two cases arising in very different contexts and not addressing due process, *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) and *Pennsylvania v. New Jersey*, 426 U.S. 660, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976). Moreover, this construction would mean that any state could be sued in any other state on any claim and would constitute a massive intrusion on traditional notions of federalism. Because *Chavez v. State of Indiana*, 122 Ariz. 560, 596 P.2d 698 (1979), required that due process tests be met to obtain personal jurisdiction over a state, and no case has held the contrary, we reject the argument.

■ Plaintiffs also contend that general jurisdiction may be asserted over the defendant State of California because its contacts with this state are so routine and continuous apart from the present case that it should be treated as doing business here. As a general proposition, general jurisdiction may be asserted over a nonresident defendant who has substantial or continuous and systematic contacts with the forum state whether or not related to the subject matter of the lawsuit. *Helicopteros Nacionales de Colombia, S.A. v. Hall, supra; Batton v. Tennessee Farmers Mut. Ins. Co., supra.* However, we have been cited to no decision, nor found any, upholding the assertion of general jurisdiction by one state over another. While *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979), makes it clear that one state may be sued in the courts of another when specific jurisdiction is asserted, nothing in that case suggests that the courts of one state are free to assert jurisdiction over another state regardless of whether the subject of the suit involves activities of the defendant state directed at the forum state. The restrictions on jurisdiction arising out of the Due Process Clause "are a consequence of territorial limitations on the power of the respective States." *Hanson v. Denckla*, 357 U.S. 235, 251, 78 S.Ct. 1228, 1238, 2 L.Ed.2d 1283, 1296 (1958). To hold that one state may assert general jurisdiction over another would obliterate that limitation, as well as the status of states as "coequal sovereigns in a federal system." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 292, 100 S.Ct. at 564, 62 L.Ed.2d at 498. Accordingly, we reject the claim of general jurisdiction.[5]

---

**3.** In *Chavez v. State of Indiana*, 122 Ariz. 560, 596 P.2d 698 (1979), a suit arising out of a child's murder in Arizona by a former inmate of an Indiana mental institution allegedly negligently released two years earlier, our supreme court suggested that foreseeability of harm in Arizona might be sufficient to confer specific jurisdiction. In light of the subsequent decisions in *World–Wide Volkswagen, Burger King, Asahi*, and *Batton*, we believe this portion of the decision is no longer the law.

**4.** The dissent is a protracted jury argument largely based on a disagreement with the immunity provided California parole authorities by California statutes. The tests for personal jurisdiction do not change based on the more advantageous content of the forum state's law. If personal jurisdiction exists in this case, it ought to exist in any case where negligent conduct in one jurisdiction has foreseeable consequences in another. Perhaps that should be the law. So far, it is not.

**5.** Because of our disposition of this issue, we do not address the remaining issues raised by plaintiffs concerning comity and discovery limitations.

■ Finally, it is argued that Arizona might have "jurisdiction by necessity" because "all three defendants could not be sued together in a single forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. at 419 n. 13, 104 S.Ct. at 1874 n. 13, 80 L.Ed.2d at 414 n. 13. All defendants here could be sued in California; the doctrine, therefore, does not apply. It is invoked not because of the inability to obtain jurisdiction but rather because Arizona law is more favorable to recovery. Preference is not necessity.

■ As a separate issue, the plaintiffs contend that the trial court erred in denying an award pursuant to A.R.S. § 12–349(A)(3) for the improvident removal of the action to federal district court. That court has already decided the issue adversely to the plaintiffs, and its decision is res judicata.

Affirmed.

LACAGNINA, J., concurs.

HATHAWAY, Judge, dissenting.

The United States Supreme Court has not addressed the specific jurisdictional issue before us, that is, whether due process permits a state's regulatory interest to be asserted over a defendant whose grossly negligent failure to control a dangerous, multiple child molester and parole violator from another state causes foreseeable harm in the forum. This matter comes before us on summary judgment entered in the trial court. If a genuine issue of material fact appears, the summary judgment should be reversed.

A little girl was kidnapped, sexually abused and murdered in Arizona, allegedly as a consequence of the combined conduct of Atwood, his parents and the gross negligence of a parole officer in California who failed to arrest or control Atwood, a newly-parolled, high risk, mentally disordered, sex offender. The officer possessed reports of at least five separate parole violations, several of which showed Atwood had left California. The parole officer failed to act, contrary to the strict supervision requirements of the Parole Procedures Manual and the California Penal Code § 3059, which specifically mandate arrest when a parolee has left the state. This failure to act was in the face of Atwood's classification by the State of California upon his impending release as a "high risk" parolee who required special supervision. One California parole officer testified that it is the practice of Los Angeles agents not to arrest parolees merely for leaving the state. This is in violation of the California Penal Code and is the functional equivalent of intentionally allowing parolees to roam into other states with impunity.

During the four-month period after Atwood's release on parole and before the murder, he was literally "out of control," was addicted to cocaine and speed, was using a wide variety of other illegal drugs, was looking for children to molest, had told a friend that he would kill his next victim, was failing to attend counseling sessions, was carrying a weapon, and was traveling around the states of California, Arizona, New Mexico, Oklahoma and Texas, in violation of his parole and California statutes. Atwood's parents and McLean, his parole officer, had actual knowledge of some of those activities and ignored their duty to find out about the others. For example, police officers in Enid, Oklahoma offered to communicate information to several California agencies—three prisons, the Los Angeles Police Department, and McLean. No one replied to the two urgent teletypes sent several weeks prior to the murder; no one tried to control Atwood's illegal activities. It would appear obvious to any reasonable person, and particularly to a specially-qualified "high risk" parole officer such as McLean, that Atwood's pattern of crime would imminently recur. He had been deemed not subject to rehabilitation.

Atwood's parents, and especially parole officer McLean, should have been profoundly alarmed by Atwood's conduct in violation of parole. The only reasonable response to that knowledge would have been to take Atwood into immediate custody and control. Yet the only person who took action was a police officer from Enid, Oklahoma, whose repeated messages to

California authorities were ignored until after the murder had occurred. When the California parole officers discovered that Atwood had been arrested by the FBI in Texas, they retroactively cancelled his parole, which was the first significant act of control exercised by any of the defendants during his four-month spree.

Arizona allows a legal remedy, A.R.S. §§ 12–820.02 and 41–621(I), when the alleged gross negligence of a parole official results in harm to an Arizona resident. California specifically disallows this remedy, Cal.Govt.Code § 845.8.

It is one thing to protect interstate commerce and individuals' due process rights by denying personal jurisdiction over out-of-state tortfeasors absent intentional and meaningful contacts with the forum state, *World–Wide Volkswagen Corp., supra.* It is quite another to use this rationale to deny legal recourse to those who suffer injury because of gross negligence having clearly foreseeable and grave consequences across a state line. A number of Arizona cities are closer to Los Angeles than the cities of northern California, both in distance and in meaningful contacts.

Arizona's regulatory interest is circumscribed by choice-of-law doctrine as reflected in the Restatement (Second) Conflict of Laws (1988 Revisions). Section 24 states that the underlying principle is "reasonableness." Section 37 deals with the Hoskinson situation, and provides that a state may exercise personal jurisdiction when the defendant "causes effects in the state by an act done elsewhere ... unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." Thus § 37 concentrates not only on the defendant, as does the "purposeful availment" doctrine, but also on the effects of the act in the forum state. The comments state that the causing of effects by itself is not a sufficient basis for jurisdiction, but that several factors should be considered:

(1) totality of contacts; (2) nature and quality of effects; and, (3) intention and foreseeability. All three factors are significantly present in the instant case.

The first is implicated, the two states being contiguous, sister states within a community of states. Dumping of parole violators, or a lackadaisical attitude of no responsibility to sister states in dealing with or failure to deal with a mobile criminal population, must not be countenanced. The Restatement, § 24, comment *a*, defines relationship in its broadest sense, not limited to economic contacts but including "all physical and non-physical circumstances which may serve to link a person with a state." Contiguity alone is not a substitute for "purposeful availment," of course, but merely a component of one of the three factors.

As to the second, the "effect" at issue was a serious crime against an Arizona resident. The Restatement gives the example of a person who explodes dynamite close to the border of a contiguous state, causing injury within that other state. Other examples might include the strict liability required of owners of wild animals whose escape causes injury or damage,[1] or noxious chemicals which poison the air across the border. In such instances, the issue becomes failure to control, rather than intent. In inherently dangerous situations intent is irrelevant.

The third factor, foreseeability, also has no absolute requirement of intent. Rather, foreseeability is established if the act "could reasonably have been expected" to cause effects within the other state. Certainly a good faith argument can be made that the California officials should have anticipated the strong possibility of crimes in Arizona from a dangerous parole violator who had left the state from Los Angeles. Defendants, by grossly negligent or intentional failure to control a known and extraordinarily dangerous child molester,

---

1. Appellants point out that "[o]ne cannot defend a suit for damages caused by an uncontrolled vicious animal by claiming it was the 'unilateral' act of the animal ... The law is clear ... that the damage is proximately caused by the failure to control and the animal is not the source of independent, intervening cause." See Dobbs, Keaton & Owen, Prosser & Keeton on Torts § 76 (5th ed.1984).

should be required to bear the risk that he will cause horrendous injury within a reasonable territorial range of activity.

The Supreme Court has already used the "effects" test of § 37 to decide a personal jurisdiction issue, *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The Ninth Circuit used it in *Brainerd v. Governors of University of Alberta*, 873 F.2d 1257 (9th Cir.1989), finding intent because the out-of-state defendant responded to two phone calls and one letter sent to him from Arizona.

The Arizona Supreme Court used § 37 to decide *Chavez v. State of Indiana for Logansport State Hosp.*, 122 Ariz. 560, 596 P.2d 698 (1979), a failure to control case factually similar to this one. The court concluded that the defendants could not reasonably have foreseen a murder in Arizona two years after release. In the present case, the court should also apply § 37, but come to the opposite conclusion on foreseeability, because the facts are stronger. The period of time between release and the murder was not two years, but four months; the killer was not a mental patient released in good faith, but a parole violator for whom state law mandated arrest; the earlier killer was out of touch with family and state officials during the two years after his release, whereas the latter had already been labelled "dangerous," had told a friend he intended to kill a child, and had been in close contact with his family, who allegedly collaborated in his parole violation. The issue is not the simple negligence of *Chavez*, but intentional nonfeasance or gross negligence in violation of the California Penal Code. See A.R.S. § 38–443 (public officer who knowingly fails to perform any duty required by law is guilty of nonfeasance.)

The majority's decision relies on a single test for personal jurisdiction—"purposeful availment"—and gives it preeminence over all other considerations, although the Restatement (Second) Conflict of Laws recognizes other factors to be weighed, as previously discussed. The Supreme Court's recent decision in *Burnham v. Superior Court*, 495 U.S. 604, 110 S.Ct. 2105, 109 L.Ed.2d 631 (1990), ignored the petitioner's plea of lack of "minimum contacts" and asserted personal jurisdiction over him; "purposeful availment" was not a factor. In *McAleer v. Smith*, 715 F.Supp. 1153, 1157 (D.R.I.1989), the court insightfully noted in discounting the applicability of the purposeful availment doctrine to tort claims:

> Tortfeasors are at odds with the privileges, benefits, and protections of local laws. Therefore, *jurisdictional determinations in tort cases focus on the causal link between the forum contact and the allegedly tortious act.* (Emphasis added.)

Appellants cite numerous cases in which "purposeful availment" is moderated or even bypassed. *O'Neil v. Picillo*, 682 F.Supp. 706 (D.R.I.1988), is particularly instructive. It involved thousands of barrels of volatile, toxic wastes which defendants in one state gave to an intermediary which dumped them in another state. The court used "common sense" (i.e., reasonableness) to find that, "[a]s other courts have recognized, ... where a defendant deals in such inherently dangerous products, a lesser showing than is ordinarily required will support jurisdiction." *O'Neil*, 682 F.Supp. at 714, n. 1.

There is even doubt whether the State of California parole board and parole officers, in their official capacities, have any personal jurisdiction defense under the fourteenth amendment's due process clause, which protects "persons." *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), held that neither a state nor state officials acting in their official capacities are persons for purposes of 42 U.S.C. § 1983, which implements § 5 of the fourteenth amendment. Much of the reasoning came from dictionary definitions of "person" from the time the fourteenth amendment was adopted which arguably pertains also to its due process clause. See *State v. Cochise County*, 800 P.2d 578 (Ariz.1990) (state is not a person in context of county claims statute). Even though *Will* was actually resolving an eleventh amendment issue, the fact is that the jurisprudence of personal

jurisdiction is enormously complicated and not reducible to a single, predicate test. See C.A. Wright & A.R. Miller, Federal Practice and Procedure, Civil 2d, § 1073 (1987).

Arizona should assert its regulatory interest in this case and take jurisdiction, it appearing, at the least, that gross negligence, if not intentional nonfeasance, is clearly at issue with catastrophic effects in Arizona. The immunity California conferred upon itself for such conduct should not be visited upon Arizona residents. Unaccountability breeds irresponsibility, a standard that Arizona has rejected. That neither California nor the federal government has seen fit to afford a remedy to a problem created by an arrogant bureaucracy should not leave Arizona victims remedyless in the name of serving federalism, nor should common sense and justice be frustrated.

If the law says that victims of a highly-dangerous, out-of-state parole violator cannot find redress in their home state against his grossly negligent keepers, I find myself concurring with Mr. Bumble: If the law says that, then the law is "a ass."[2] For the reasons given, I would reverse the summary judgment.

**2.** Charles Dickens, *Oliver Twist,* Chapter 51.