[657 NYS2d 721]

Jeanne H. Morrison, Appellant, v Budget Rent A Car Systems, Inc., et al., Respondents.

Second Department, April 28, 1997

## APPEARANCES OF COUNSEL

*Andrew Rosner,* Mineola, for appellant.

*Gladstein & Isaac,* New York City *(Harvey Gladstein, Emily Diamond* and *Brian J. Isaac* of counsel), for respondents.

## OPINION OF THE COURT

ROSENBLATT, J. P.

The case before us involves threshold questions of jurisdiction and the waiver of jurisdictional defenses. We are also called upon to consider another State's sovereign immunity statute and the issues that it presents in the realms of the Full

Faith and Credit Clause of the United States Constitution and interstate comity.

The case grew out of a two-car accident that occurred in New York State. The plaintiff was driving one car; the other car was occupied by the defendant Mark A. Lucas (the driver) and his coemployee, the defendant Charles S. Whisnant, who had leased the car from the defendant Budget Rent A Car Systems, Inc.[1] The accident occurred in Suffolk County after Lucas and Whisnant traveled into New York State, within the scope of their employment for the defendant University of South Carolina. The plaintiff commenced the action by filing the summons and complaint with the Clerk of the Supreme Court, Suffolk County, following which the plaintiff effectuated service on the defendants in accordance with Vehicle and Traffic Law § 253 (see also, CPLR 302 [a] [2]; Siegel, NY Prac § 97, at 147 [2d ed]).

In written stipulations, the law firm representing the defendants twice agreed to "waive the affirmative defense of lack of jurisdiction" in exchange for two extensions of their time to answer. In their answer, however, the defendants raised the affirmative defenses of lack of subject matter jurisdiction and lack of personal jurisdiction, notwithstanding the stipulations. After the plaintiff rejected the answer, the defendants moved to compel the plaintiff to accept it and to vacate the stipulations. The plaintiff cross-moved to strike both affirmative defenses on the ground that the defendants had waived them, and on the further ground that the affirmative defenses were insufficient as a matter of law. The Supreme Court denied the plaintiff's motion in its entirety, and granted the defendants' motion to compel the plaintiff to accept the answer, thus keeping the affirmative defenses alive. As limited by her brief,[2] the plaintiff has appealed from so much of the order as denied that branch of her cross motion which was to strike the affirmative defenses and granted the defendants' motion to compel her to accept the defendants' answer, which included the challenged affirmative defenses.

The defendants acknowledge that their attorneys entered into two written stipulations by which they agreed to "hereby

1. By "defendants" we refer to the South Carolina defendants, namely, Lucas, Whisnant, and the University of South Carolina.

2. In the cross motion, the plaintiff included a request for summary judgment on the issue of liability. She has not addressed that point in her appeal and we consider it abandoned (see, Agee v Ajar, 154 AD2d 569; Praeger v Praeger, 162 AD2d 671).

waive the affirmative defense of lack of jurisdiction" in exchange for extensions of time to answer the complaint. They claim, however, that their attorneys—the same attorneys who represented them in the stipulations, on the motion, the cross motion, the answer, and on this appeal—had no authority to stipulate as they did. They also claim that these attorneys improvidently stipulated away what the defendants now assert to be complete defenses under the South Carolina Tort Claims Act (see, SC Code Annot § 15-78-10 et seq.) by which, they assert, "South Carolina University [sic], its agents, servants, and employees, cannot be sued outside of the bounds of South Carolina". In essence, they contend that the defendants may not be sued in New York, that they are protected by sovereign immunity, and that their stipulations should be undone. For reasons that follow we hold that the affirmative defenses must fail.

### THE STIPULATIONS

The plaintiff's primary argument is that the stipulations are enforceable while the defendants seek to be relieved of the stipulations, claiming that they were entered into improvidently.

Stipulations are favored by the courts and are not lightly cast aside (see, Matter of Galasso, 35 NY2d 319, 321; see also, Perrino v Bimasco, Inc., 234 AD2d 281). In Hallock v State of New York (64 NY2d 224), the Court of Appeals held that a stipulation was binding on a client even though it exceeded the attorney's actual authority. The Court recognized that strict enforcement of stipulations "not only serves the interest of efficient dispute resolution but also is essential to the management of court calendars and integrity of the litigation process" (Hallock v State of New York, supra, at 230). Thus, the Court concluded that "[o]nly where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation" (Hallock v State of New York, supra, at 230). The courts therefore have vacated stipulations when the stipulating attorney lacked both actual and apparent authority (see, Matter of Dayho Motel v Assessor of Town of Orangetown, 229 AD2d 435), but will, however, enforce written stipulations when the attorney has apparent authority to enter into a stipulation (see, Javarone v Pallone, 234 AD2d 814; Ryerson v Ryerson, 208 AD2d 914).

The range of issues to which parties may stipulate is broad—
"it lies within the power of the litigants to stipulate to virtu-
ally anything concerning their litigation" (McLaughlin,
Practice Commentaries, McKinney's Cons Laws of NY, Book
7B, CPLR C2104:1, at 559-560). *Hallock v State of New York
(supra)* has been applied to enforce written stipulations in a
wide variety of circumstances *(see, e.g., Matter of Stark,* 233
AD2d 450 [stipulation waiving party's interest in an estate];
*Meyer v Meyer,* 228 AD2d 955 [stipulation agreeing to submit
all further disputes to an arbitrator]; *McAllan v 124-128 W.
134th St. Tenants Assn.,* 227 AD2d 352 [plaintiff's stipulation
to dismiss a cause of action]; *Matter of Lois F.,* 209 AD2d 856
[stipulation agreeing that individual was incompetent and ap-
pointing committee for her]; *Ryerson v Ryerson,* 208 AD2d 914,
*supra* [stipulation providing for judicial sale of property]; *Mat-
ter of Infosino v Infosino,* 204 AD2d 324 [stipulation to limit
husband's obligation to provide medical insurance coverage for
wife]; *Henry v Gutenplan,* 197 AD2d 608 [stipulation discontinu-
ing action]; *Dousmanis v Joe Hornstein, Inc.,* 181 AD2d 592
[stipulation waiving Statute of Limitations defense]; *Greenberg
v Greenberg,* 150 AD2d 429 [stipulation regarding payment of a
money judgment]).

We are satisfied that the stipulations before us were both
bargained for and properly based on the apparent authority of
the defendants' attorneys. Their enforceability turns on the
extent to which a party, through its attorney, may waive
jurisdictional defenses.

### SUBJECT MATTER JURISDICTION and PERSONAL JURISDICTION

The defendants stipulated to waive the affirmative defense of
lack of "jurisdiction", but later interposed affirmative defenses
as to both personal jurisdiction and subject matter jurisdiction.
Thus, at the outset it is important to distinguish between
subject matter jurisdiction and personal jurisdiction, particu-
larly with regard to the question of waivability.

As the late Chief Judge Breitel noted in *Lacks v Lacks* (41
NY2d 71, 74), "[j]urisdiction is a word of elastic, diverse, and
disparate meanings" that may have caused its share of confu-
sion *(see also, Nuernberger v State of New York,* 41 NY2d 111,
117-118). In its most basic sense, the term has long been ap-
plied as evincing the power to adjudge *(see, Hunt v Hunt,* 72
NY 217, 228) which bespeaks subject matter jurisdiction *(see,
Thrasher v United States Liab. Ins. Co.,* 19 NY2d 159, 166;

*Matter of Fry v Village of Tarrytown,* 89 NY2d 714). It has also long been used to describe the judicial power to enforce a judgment and to bind a party over whom it has a legal hold *(see, Reed v Chilson,* 142 NY 152), a concept that relates to personal jurisdiction *(see, Masten v Olcott,* 101 NY 152).

As with members of an extended family, these two types of jurisdiction will appear at many of the same functions, and have, on occasion, been mistaken for one another. They are different, however, in their availability and their character. The United States Supreme Court has described personal jurisdiction as going to a court's power to exercise control over the parties, as opposed to subject matter jurisdiction, which is an "absolute [stricture] on the court", in terms of its statutory or constitutional capacity to adjudicate particular *types* of suits *(Leroy v Great W. United Corp.,* 443 US 173, 180; *see also, Reynolds v Stockton,* 140 US 254, 268; 1 Casad, Jurisdiction in Civil Actions § 1.01 [1] *et seq.* [2d ed]; Restatement [Second] of Conflict of Laws § 105, at 316).

In New York, the authority of the courts to adjudicate classes of cases derives ultimately from article VI of the New York Constitution. The constitutional limits that are placed upon particular courts define their authority and, hence, their subject matter jurisdiction, so that no New York court may exercise powers beyond those granted by the New York Constitution and the implementational statutes *(see, e.g., Lincoln First Bank v Sanford,* 173 AD2d 65; *Wikarski v State of New York,* 91 AD2d 1174; *Matter of Walker v Walker,* 86 NY2d 624, 629; *Marine Midland Bank v Bowker,* 89 AD2d 194, *affd* 59 NY2d 739; *Matter of Byrnes v County of Monroe,* 122 AD2d 549).

Even the New York State Supreme Court, which has been called a court of general " 'unlimited and unqualified jurisdiction' " *(Matter of Fry v Village of Tarrytown, supra,* at 718, quoting *Kagen v Kagen,* 21 NY2d 532, 537; *see also, Murphy v Milonas,* 234 AD2d 109) may not entertain actions over which it lacks subject matter jurisdiction *(see, e.g., Matter of Schulz v State of New York,* 86 NY2d 225, *cert denied* — US —, 116 S Ct 382; *Nominee Realty v State of New York,* 233 AD2d 426). The same holds true for the Appellate Divisions *(see, e.g., Central Hudson Gas & Elec. Corp. v Newman,* 35 AD2d 989; *Shabazz v State of N. Y. Workers' Compensation Bd.,* 133 AD2d 285) and the Court of Appeals *(see, Inland Vale Farm Co. v Stergianopoulos,* 65 NY2d 718, 719, n).

Accordingly, courts have been held to lack subject matter jurisdiction when, for example, they act beyond their monetary limitations *(see, Marine Midland Bank v Bowker, supra)*, their geographical limitations *(see, People v Epstein,* 47 AD2d 661), or their juridical limitations, as in the incapacity of certain courts to entertain actions for declaratory relief *(see, Abed v Zach Assocs.,* 124 AD2d 531) or CPLR article 78 relief *(see, Matter of Leonora M.,* 104 AD2d 755; *Matter of Naima C.,* 39 AD2d 964). A State court may also lack subject matter jurisdiction in cases of Federal preemption *(see, Eastdil Realty v Gallagher,* 152 AD2d 478), in matters of religious doctrine and practice *(see, Avitzur v Avitzur,* 58 NY2d 108, *cert denied* 464 US 817), or if there is a lack of justiciability *(see, Matter of New York State Inspection, Sec. & Law Enforcement Empls. v Cuomo,* 64 NY2d 233, 241, n 3).

Personal jurisdiction, on the other hand (sometimes referred to as "in personam jurisdiction"),[3] also affects the court's powers, but, broadly speaking, it relates to the court's power over parties as opposed to its power over cases. Because personal jurisdiction deals with the way in which courts gain and exercise their hold on parties, the doctrine has long been bound up not only with due process criteria in relation to in-State service of process *(see, Townsend v Hanks,* 140 AD2d 162), but with sensibilities involving the exercise of jurisdiction by the courts of one State over nonresidents *(see, Burnham v Superior Ct.,* 495 US 604).

In practice, personal jurisdiction issues often center around the viability of a State's "long-arm" statute *(see, Helicopteros Nacionales v Hall,* 466 US 408; *Keeton v Hustler Mag.,* 465 US 770), and questions of notice and the opportunity to defend *(see, Overmyer Co. v Frick Co.,* 405 US 174; *Mullane v Central Hanover Trust Co.,* 339 US 306).

In a classic statement of the principle, a State court's assertion of personal jurisdiction must comport with " 'traditional notions of fair play and substantial justice' " *(International Shoe Co. v Washington,* 326 US 310, 316, quoting *Milliken v Meyer,* 311 US 457, 463). Unlike limits on subject matter jurisdiction, the interest that a limitation on personal jurisdiction protects is an individual one—a personal one by definition—of

---

3. The terms have been used interchangeably *(see, e.g., Kulko v Superior Ct.,* 436 US 84; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443, *cert denied sub nom. Estwing Mfg. Co. v Singer,* 382 US 905; *Schultz v Hyman,* 201 AD2d 956). For anyone craving a distinction, see 1 Casad, Jurisdiction in Civil Actions *(op. cit.,* at § 1.01 [2]).

not being subject to the binding judgments of the court *(see, World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 294; *Van Cauwenberghe v Biard,* 486 US 517, 526). Thus, if a State through its court system is to reach out and touch someone, i.e., bind that person by a judgment issued by that State's courts, it may only do so if it satisfies due process criteria *(see, Phillips Petroleum Co. v Shutts,* 472 US 797; *Burger King Corp. v Rudzewicz,* 471 US 462).

Although challenges to subject matter jurisdiction and personal jurisdiction are both addressed in CPLR 3211 *(see,* CPLR 3211 [a] [2] for subject matter jurisdiction, and CPLR 3211 [a] [8] for personal jurisdiction), a challenge to personal jurisdiction is more easily relinquished than a challenge to subject matter jurisdiction *(see, Interlink Metals & Chems. v Kazdan,* 222 AD2d 55; *see also,* L 1996, ch 501, § 1)—a consideration that bears on the defendants' stipulations. As such, a defense based on lack of personal jurisdiction may be waived *(see, Interlink Metals & Chems. v Kazdan, supra)* or negotiated away by stipulation *(see, Milbank v Lauersen,* 188 AD2d 644). For years, the commentators have even suggested that it is good practice by plaintiffs to exact the personal jurisdiction waiver as a quid pro quo in exchange for extensions of time to answer *(see,* Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3211:54, at 74; Siegel, *The Urgency of Timing the Adjudication of Jurisdictional Objections,* 276 NY St Law Digest 1 [Dec. 1982]; Fryburg, Outside Counsel, *The Process of Personal Service of Process,* NYLJ, Dec. 18, 1996, at 1, col 1, at 4, col 5).

If, however, a court lacks subject matter jurisdiction, the parties may not confer it on the court *(see, Graham v New York City Hous. Auth.,* 224 AD2d 248; *Strina v Troiano,* 119 AD2d 566) and it may not be created by laches or estoppel *(see, Matter of Anthony J.,* 143 AD2d 668; *Nuernberger v State of New York,* 41 NY2d 111, *supra).* More importantly in the case before us, we recognize that when a court lacks subject matter jurisdiction it may not acquire it by waiver *(see, Matter of Rougeron,* 17 NY2d 264, 271, *cert denied sub nom. Rougeron v Rougeron,* 385 US 899). "A judgment or order issued without subject matter jurisdiction is void, and that defect may be raised at any time and may not be waived" *(Editorial Photocolor Archives v Granger Collection,* 61 NY2d 517, 523).

■ For these reasons, we conclude that the defendants could and did stipulate away the defense of lack of personal jurisdiction, but that their stipulation to waive the defense of subject matter jurisdiction was legally inoperative.

SOVEREIGN IMMUNITY

Having made these distinctions, we turn to the question of whether the defendants' claim of sovereign immunity falls under the purported defense of lack of personal jurisdiction (CPLR 3211 [a] [8]), which the defendants have waived, or subject matter jurisdiction (CPLR 3211 [a] [2]), which is not amenable to waiver. More often than not, the designation of a defense as falling under the rubric of personal jurisdiction as opposed to subject matter jurisdiction is trouble free. This is not so when sovereign immunity is involved.

In a number of instances courts have referred to the concept of sovereign immunity as preventing the exercise of "personal jurisdiction" over the sovereign *(see, e.g., State Div. of Human Rights [Geraci] v New York State Dept. of Correctional Servs.,* 90 AD2d 51, 61; *Colombo v Dorrity,* 115 NC App 81, 443 SE2d 752; *see also, Lathrop v Unidentified, Wrecked & Abandoned Vessel,* 817 F Supp 953; 4 Weinstein-Korn-Miller, NY Civ Prac ¶ 3211.10, at 32-61). This is due, no doubt, to the entirely understandable rationale that if a would-be plaintiff is not permitted to sue the sovereign, the plaintiff can gain no personal "hold" on it of the type necessary to enforce a judgment. Nevertheless, for cases in which there are consequences that attach to the distinction between personal jurisdiction and subject matter jurisdiction, it is more appropriate, as between the two, to characterize a sovereign immunity bar as one that entails a lack of subject matter jurisdiction. Our conclusion is reinforced by the language of the Court of Appeals in *Brown v State of New York* (89 NY2d 172), in which it measured the State's immunity in terms of the subject matter jurisdiction of the Court of Claims *(see also, Finnerty v New York State Thruway Auth.,* 75 NY2d 721).[4] There is also the question of sequence. As to this there is clear authority that the doctrine of sovereign immunity is invoked only after the New York court has acquired personal jurisdiction over the parties *(see, Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574, 579; *Vicente v State of Trinidad & Tobago,* 42 NY2d 929).

---

4. In the Federal arena there has been comment about the intimate relationship of the three concepts of subject matter jurisdiction, personal jurisdiction, and sovereign immunity *(see, Norris v State of Georgia,* 522 F2d 1006) and the occasional need to unravel them *(see, Maritime Intl. Nominees Establishment v Republic of Guinea,* 693 F2d 1094, 1099, *cert denied* 464 US 815), given the "labyrinthine" character of the relationship (Note, *Federal Jurisdiction and Procedure,* 107 Harv L Rev 254, 264).

We conclude that in the case before us the proffered sovereign immunity bar entails the affirmative defense of lack of subject matter jurisdiction. Because that is so, and because the defendants' waiver of subject matter jurisdiction was inoperative, the plaintiff may not rely on the stipulations to defeat the affirmative defense of lack of subject matter jurisdiction.

### THE TORT CLAIMS ACT OF THE DEFENDANT STATE

The plaintiff contends, however, that even if we disagree with her as to the efficacy of the stipulations, both affirmative defenses must fail as a matter of law. She argues that the South Carolina Tort Claims Act (SC Code Annot § 15-78-10 *et seq.* [hereinafter SCTCA]) is not designed to immunize the defendants from liability for torts allegedly committed in New York, and that, in any event, the SCTCA does not carry with it an entitlement to interstate comity.

The parties agree that for purposes of the SCTCA the University of South Carolina is synonymous with the government (SC Code Annot § 15-78-30 [e]). It is also undisputed that the defendants Whisnant and Lucas were acting within the scope of their employment for the University (SC Code Annot § 15-78-30 [i]).

The purpose of the SCTCA, as set forth in its declaration of policy, is to provide for liability on the part of the State, but only to the extent that immunity is waived within the SCTCA (SC Code Annot § 15-78-20 [b]). On its surface, South Carolina Code Annotated § 15-78-100 supports the plaintiff's claim that the SCTCA was not intended to foreclose by immunity those actions—such as the one before us—in which South Carolina State employees are sued in other State courts for torts committed in other States.

South Carolina Code Annotated 15-78-100 (b) reads as follows: "Jurisdiction for any action brought under this chapter is in the circuit court and brought in the county in *which the act or omission occurred*" (emphasis added).

"All *other* immunities applicable to a governmental entity" are preserved (SC Code Annot § 15-78-20 [b]). The SCTCA contains various requirements involving the filing of claims and their timeliness (SC Code Annot § 15-78-80), a cap on li-

ability (SC Code Annot § 15-78-120), and other procedural pro-
visions. In its introductory discussion of immunity (SC Code
Annot § 15-78-20 [a]), the SCTCA does not distinguish between
suits brought against South Carolina in its own courts and
suits brought against South Carolina in other State courts.

But another section of the SCTCA does speak to out-of-State
suits against South Carolina State employees even though
South Carolina Code Annotated § 15-78-100 (b) seems to sug-
gest that the SCTCA is a venue measure. South Carolina Code
Annotated § 15-78-20 (e) reads as follows: "Nothing in this
chapter is construed as a waiver of the state's or political
subdivision's immunity from suit in federal court under the
Eleventh Amendment to the Constitution of the United States
nor as consent to be sued in any state court beyond the bound-
aries of the State of South Carolina". This provision refers to
two distinct varieties of immunity, that differ in source,
concept, and implication.

It is well known that for centuries sovereigns have enjoyed
the absolute right to immunize themselves from suits within
their *own* courts *(see,* Pollock and Maitland, History of English
Law, at 515 [2d ed]). This is true of the United States *(see,
United States v Sherwood,* 312 US 584; *United States v Lee,*
106 US 196), and it is also true of the States of the union *(see,
Railroad Co. v Tennessee,* 101 US 337; *Ex Parte State of New
York,* 256 US 490). New York has availed itself of sovereign
immunity except to the extent that it has waived it *(see,* Court
of Claims Act § 8; *Glassman v Glassman,* 309 NY 436, 440;
*Koerner v State of New York, Pilgrim Psychiatric Ctr.,* 62 NY2d
442, 448; *see generally,* 21 Carmody-Wait 2d, NY Prac
§ 126:111).[5]

The exercise of sovereign immunity by the States goes back
to early recorded cases *(see, State v Brosseau,* 124 NH 184, 193,

---

5. Although the Eleventh Amendment does not employ the term
"sovereign immunity", the United States Supreme Court has held that the
Eleventh Amendment, by which an "unconsenting state is constitutionally
immune from suits brought by private citizens in federal courts" (Shapiro,
*Wrong Turns: The Eleventh Amendment and the Pennhurst Case,* 98 Harv L
Rev 61, 65 [1984], also "applies" to a Federal suit against a State by one of its
own citizens *(see, Edelman v Jordan,* 415 US 651, 662-663; *Hans v Louisiana,*
134 US 1; *Ex Parte Young,* 209 US 123, 150). For a critique as to the reach of
the Eleventh Amendment, *see,* Shapiro *(op. cit.,* at 71).

470 A2d 869, 875 [cases cited in concurring opinion]), but because the practice of the States waiving their sovereign immunity is relatively recent, the question whether one State must accord immunity to another State was not decided by the United States Supreme Court until 1979 *(see, Nevada v Hall, 440 US 410)*, close to two centuries after the Federal Constitution was ratified.

South Carolina's waiver of its right to be sued in its own courts is not a waiver of the immunity that it enjoys under the Eleventh Amendment of the United States Constitution, which bars Federal courts from entertaining several types of suits against unconsenting States *(see, Florida Dept. of Health v Florida Nursing Home Assn.,* 450 US 147, 150; *Welch v Texas Dept. of Highways,* 483 US 468, 472). By enacting the above-quoted declaration of immunity under South Carolina Code Annotated § 15-78-20 (e), South Carolina was simply fortifying its stance under the Eleventh Amendment. A State may waive its Eleventh Amendment protection from Federal court suits by citizens, but such waivers must be clearly spelled out *(see, Clark v Barnard,* 108 US 436, 447; *Edelman v Jordan,* 415 US 651, 673, *supra)*. In South Carolina Code Annotated § 17-78-20 (e), South Carolina was doing no more or less than any State has a right to do, notably, telling the world that its waiver of immunity statute should not be taken as a forfeiture of its Eleventh Amendment right to be shielded from suits by citizens in *Federal* courts *(see, Pennhurst State School & Hosp. v Halderman,* 465 US 89, 99, n 9; Gibbons, *The Eleventh Amendment and State Sovereign Immunity: A Reinterpretation,* 83 Colum L Rev 1889 [1983])*.

No Eleventh Amendment question is present when a State is sued in another State by a resident of the other State *(see, Maine v Thiboutot,* 448 US 1, 9, n 7). The second part of South Carolina Code Annotated § 15-78-20 (e), however, presents a very different declaration, one by which South Carolina states that its immunity waiver should not be taken as an invitation to be named as a defendant in another *State* court. As to this, the matter must be determined in two spheres: Federal constitutional law, as to which, ultimately, the United States Supreme Court is the arbiter; and the concept of interstate comity, of which the forum State—here, New York—is the arbiter.

### FULL FAITH AND CREDIT and COMITY

If there is an obligation to accord sovereign immunity to another State, it must be founded on the Full Faith and Credit

provisions of article IV of the United States Constitution, or on principles of interstate comity. In *Nevada v Hall* (440 US 410, *supra),* Nevada contended that the Full Faith and Credit Clause required California to respect the limitations on Nevada's statutory waiver of immunity from suit. That waiver, similar to the one in the South Carolina Tort Claims Act, gave its consent only to suits in its own courts. The Supreme Court held that the Full Faith and Credit Clause does require each State to give effect to the official acts of another State *(see, Nevada v Hall, supra,* at 421), so that a *judgment* entered in one State must be respected in another provided that the first State had jurisdiction over the person and the subject matter, but that the Full Faith and Credit Clause does not require a State to apply another State's law in violation of its own legitimate public policy *(see also, Pacific Ins. Co. v Industrial Commn.,* 306 US 493; *Allstate Ins. Co. v Hague,* 449 US 302; *Greschler v Greschler,* 51 NY2d 368).

That being so, the defendants further contend that in conformity with principles of comity, New York should abide South Carolina's immunity statute. Comity differs from Full Faith and Credit in that the latter is an explicit constitutionally based provision involving relationships only among the States, whereas comity is based not on a constitutional provision, but on concepts such as harmony, accommodation, policy, and compatibility, in either an interstate context *(see, Bank of Augusta v Earle,* 13 Pet [38 US] 519; *Iglehart v Iglehart,* 204 US 478; *Stoddard v Lum,* 159 NY 265; Nash, *In Re Radical Interpretations of American Law: The Relation of Law and History,* 82 Mich L Rev 274 [1983]) or one involving other nations *(see, Banco Nacional v Sabbatino,* 376 US 398; *Hilton v Guyot,* 159 US 113; *Murray v Schooner Charming Betsy,* 2 Cranch [6 US] 64; Von Mehren and Trautman, *Recognitions of Foreign Adjudications: A Survey and a Suggested Approach,* 81 Harv L Rev 1601; Paul, *Comity in International Law,* 32 Harv Intl L J 1 [Winter 1991]).

In a case that involved precisely the same juxtaposition of immunity and comity, the New York Court of Appeals declined to accord comity to a Texas immunity statute *(see, Ehrlich-Bober & Co. v University of Houston,* 49 NY2d 574, *supra).* The defendants argue, correctly, that *Ehrlich-Bober,* which involved a commercial transaction, does not require us to reject the immunity by comity doctrine in all cases. In our case, they claim, comity is called for. We disagree, and we conclude that the similarity and design of the New York and South Carolina

long-arm statutes supply a cogent basis for us to apply the *Ehrlich-Bober* precedent to the case before us, given the location of the accident, as well as the plaintiff's more significant relationship with the forum State, New York.

South Carolina, like New York, has a long-arm statute. Under South Carolina's statutory scheme (SC Code Annot §§ 15-9-350, 15-9-710, 15-9-750), its courts may gain personal jurisdiction over nonresidents for a variety of circumstances that resemble those in New York's CPLR 302. South Carolina has employed its long-arm statute to gain personal jurisdiction over New York residents *(see, Hammond v Butler, Means, Evins & Brown, 300 SC 458, 388 SE2d 796, cert denied sub nom. Kramer v Hammond, 498 US 952; Atlantic Soft Drink Co. v South Carolina Natl. Bank, 287 SC 228, 336 SE2d 876).* South Carolina also has a nonresident motorist statute similar to New York Vehicle and Traffic Law § 253. Pursuant to South Carolina's statutory scheme, a nonresident who drives on its roads is subject to constructive service of process *(see, Krueger v Hider, 48 F Supp 708)* and is thus amenable to South Carolina's jurisdiction. The plaintiff in a South Carolina court may gain personal jurisdiction over a nonresident motorist by serving the South Carolina Director of the Department of Public Safety as attorney for the nonresident motorist, with provision for notice by mail to the defendant (SC Code Annot § 15-9-350). This procedure was challenged (under a predecessor statute) and was upheld by the Supreme Court of South Carolina *(see, Ward v Miller, 230 SC 288, 95 SE2d 482).* In this, the South Carolina scheme mirrors that of New York, and both fall within the Federal constitutional perimeters of *Hess v Pawloski* (274 US 352) in relation to long-arm jurisdiction over nonresident motorists. New York and South Carolina obviously both recognize that their residents will traverse each other's highways, that plaintiffs will bring personal injury actions against residents of each other's State *(see, e.g., Unisun Ins. Co. v Hertz Rental Corp., 312 SC 549, 436 SE2d 182),* and their Legislatures have enacted provisions that are, in effect, reciprocal. Statutes of this type have been enacted in virtually every State *(see,* 13 Blashfield, Automobile Law and Practice § 452.4, at 42 [3d rev ed]; 61 CJS, Motor Vehicles, § 501 *et seq.,* at 258-305).

There has been a growing body of post-*Nevada v Hall (supra)* jurisprudence following the Supreme Court's declaration that the decision of a State to accord sovereign immunity to another State is essentially a matter of comity. Considering that

the issue involves the sensitivities inherent in cooperative Federalism, it is particularly apt for us to examine the holdings and criteria of other State court decisions in this field.

A number of State courts have refused to accord sovereign immunity by way of interstate comity, stating simply that their own State interests favor the assumption of jurisdiction *(see, Hansford v District of Columbia,* 329 Md 112, 617 A2d 1057, *cert denied* 509 US 905; *Peterson v State,* 635 P2d 241 [Tex])*. Other forum States have declined to extend comity considering that their own statutes afford a lesser degree of immunity—a fuller level of compensation—than does the defendant State *(see, Radley v Transit Auth.,* 486 NW2d 299 [Iowa]; *Struebin v State,* 322 NW2d 84 [Iowa], *cert denied* 459 US 1087), such that its residents should not be subordinated to the restrictions or immunity of the defendant State *(see, Faulkner v University of Tenn.,* 627 So 2d 362 [Ala], *cert denied* 510 US 1101; *see also, Head v Platte County,* 242 Kan 442, 749 P2d 6; *Hernandez v City of Salt Lake,* 100 Nev 504, 686 P2d 251)*. Another reason given for disfavoring immunity by comity is the efficiency of litigation in multiparty actions *(see, Wendt v County of Osceola,* 289 NW2d 67 [Minn])*.

A frequently cited criterion entails a choice of law inquiry, as to which State has the more significant relationship to the parties and the action. As to this, the occurrence of the actionable event or events in the forum State argues for the denial of immunity and the retention of jurisdiction, as does the greater degree of contact or consequence in the forum State *(see, Haberman v Washington Pub. Power Supply Sys.,* 109 Wash 2d 107, 159-160, 744 P2d 1032, 1066, *mod on other grounds* 750 P2d 254; *Laconis v Burlington County Bridge Commn.,* 400 Pa Super 483, 583 A2d 1218; *Mianecki v Second Judicial Dist. Ct.,* 99 Nev 93, 658 P2d 422)*.

When immunity through interstate comity has been extended it has usually been for reasons that do not fit our case. When the contacts and the significant relationships, including the situs of the actionable event, are with the defendant State, an argument for comity may be made out *(see, Reed v University of N. Dakota,* 543 NW2d 106 [Minn]; *Flamer v New Jersey Tr. Bus Operations,* 414 Pa Super 350, 607 A2d 260; *Jackett v Los Angeles Dept. of Water & Power,* 771 P2d 1074 [Utah]; *see also, Ramsden v State of Ill.,* 695 SW2d 457 [Mo])*. So too, when the actions of the defendant State are not sufficiently directed toward the forum State *(see, Hoskinson v State of Cal.,* 168 Ariz 250, 812 P2d 1068, *cert denied* 502 US 981; *Simmons v State,* 206 Mont 264, 670 P2d 1372)*.

In other instances forum States, when comparing their immunity statutes with those of the defendant States, have concluded that the circumstances are such that the denial of immunity by comity would result in forum shopping *(see, Newberry v Georgia Dept. of Indus. & Trade,* 286 SC 574, 336 SE2d 464) or that the forum State's interests would not be disserved by according immunity through comity *(see, Clement v State,* 524 NE2d 36 [Ind]; *University of Iowa Press v Urrea,* 211 Ga App 564, 440 SE2d 203; *Beard v Viene,* 826 P2d 990; *Schoeberlein v Purdue Univ.,* 129 Ill 2d 372, 544 NE2d 283).

All of these themes support our conclusion. Beyond that, and given the respective long-arm motorist statutes that exist in both New York and South Carolina, there is a particularly important consideration in our determination, notably whether a claim of this kind would be actionable in New York if it were the New York State employees who were alleged to have been negligent in causing an accident and injuries to South Carolinians driving in New York. Using that test, it is clear that under New York's waiver of immunity statute (Court of Claims Act § 8), any injured party would be free to bring an action against this State, based on the negligent acts of its employees, under the concept of respondeat superior *(see, Jackson v State of New York,* 261 NY 134; 62 NY Jur 2d, Government Tort Liability, § 21). This is true, of course, in the case of motor vehicle accidents allegedly caused by New York State employees acting within the scope of their employment *(see, Lundberg v State of New York,* 25 NY2d 467; *Dooley v State of New York,* 254 App Div 381, *affd* 280 NY 748). Moreover, in waiving its immunity, New York does not distinguish between New York plaintiffs and nonresident plaintiffs *(see, e.g., Tamm v State of New York,* 29 AD2d 601, *affd* 26 NY2d 719).

Lastly, we consider South Carolina's own decisional law on the subject. In *Melton v Crowder* (317 SC 253, 452 SE2d 834), the Supreme Court of South Carolina declined to accord North Carolina immunity by comity when a North Carolina employee was alleged to have caused an accident, with ensuing injuries to the plaintiff, in South Carolina.

The defendants' reliance on sovereign immunity forms the basis of their challenge to New York's subject matter jurisdiction. To the extent, however, that the defendants raise the defense of lack of *personal* jurisdiction as based on sovereign immunity, that defense must also fail as a matter of law, for the same reasons that the defense of lack of subject matter jurisdiction fails. All of the considerations support the retention

of jurisdiction and the dismissal of the affirmative defenses as a matter of law.

Accordingly, the order must be modified by deleting the provision thereof which denied that branch of the plaintiff's cross motion which was to dismiss the affirmative defenses of lack of subject matter and personal jurisdiction and substituting therefor a provision granting that branch of the plaintiff's cross motion.

RITTER, FRIEDMANN and FLORIO, JJ., concur.

Ordered that the order is modified by deleting the provision thereof which denied that branch of the plaintiff's cross motion which was to dismiss the affirmative defenses of lack of subject matter and personal jurisdiction and substituting therefor a provision granting that branch of the cross motion; as so modified, the order is affirmed, insofar as appealed from, with costs to the appellant.