■ POLICE BENEVOLENT ASSOCIATION OF THE NEW YORK STATE TROOPERS, INC., et al., Appellants, v NEW YORK STATE DIVISION OF STATE POLICE et al., Respondents. [838 NYS2d 199]—

Carpinello, J. Appeal from an order of the Supreme Court (Teresi, J.), entered February 14, 2006, in Albany County, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint.

For over 25 years, the Internal Affairs Bureau of defendant New York State Division of State Police (hereinafter the State Police) has followed an unwritten policy of requiring members to authorize disclosure of confidential medical records when events raise questions as to the member's integrity or fitness to serve. In particular, during the course of administrative investigations stemming from both on and off-duty conduct, a member may be requested to execute a release form granting the State Police access to his or her medical records or be subject to disciplinary action. According to the Chief Inspector of the Internal Affairs Bureau of the State Police, the type of medical information sought is commensurate with the degree of concern raised by the member's conduct and all medical records obtained are held in the strictest confidence and protected against disclosure. The record before us contains facts pertaining to two situations where this policy was applied.

In November 2003, plaintiff Michael J. Tully, then a Sergeant with the State Police, was violently demanding entrance into the home of his ex-wife, prompting a 911 call by her for assistance. When local police arrived on the scene, Tully refused their requests to leave, threatened to bring the situation to a "head," "one way or another," and was adamant that they would have to arrest him to get him to leave. He was physically removed from the property and immediately transported to a local hospital for a psychiatric evaluation. In a separate incident one month later, plaintiff Randal Skrypek, then a Trooper with the State Police, made a series of 911 calls first claiming to be lost and then claiming to have been assaulted. This prompted an extensive manhunt. Skrypek was finally found injured in his vehicle and was transported to a local hospital. It was ultimately determined, however, that his claims were false and his injuries self-inflicted.

The Internal Affairs Bureau of the State Police commenced administrative investigations into each of these incidents. In the course of same, Tully and Skrypek were requested to execute written releases authorizing the State Police to obtain the medical records pertaining to these incidents. Both initially refused but eventually complied, albeit under protest. Ultimately, charges of misconduct were brought against both stemming from these incidents and separate hearings conducted. On March 22, 2004, defendant Wayne E. Bennett, Superintendent of the State Police, adopted the findings of a Hearing Board and dismissed Tully. Thereafter, on January 19, 2005, Bennett adopted the findings of another Hearing Board and dismissed Skrypek.[1] Neither Tully nor Skrypek, however, challenged their respective dismissals in a CPLR article 78 proceeding.

In between Tully's dismissal and Skrypek's dismissal, the instant declaratory judgment action was commenced by plaintiff Police Benevolent Association of the New York State Troopers, Inc. (hereinafter PBA), as well as Tully and Skrypek individually, challenging the constitutionality and legality of the State Police's unwritten policy of mandating members to sign releases disclosing their confidential medical information or be subject to disciplinary action. In particular, the complaint sought a declaration of the illegality of the State Police's "continued" implementation of the unwritten policy and the release form itself. At issue is an order of Supreme Court granting defendants summary judgment.

We agree with defendants' contention that the PBA's facial attack on this unwritten policy is not justiciable.[2] "The 'justiciable controversy' upon which a declaratory judgment may be rendered requires not only that the plaintiffs in such an action have an interest sufficient to constitute standing to maintain the action but also that the controversy involve present, rather than hypothetical, contingent or remote, prejudice to plaintiffs" (*American Ins. Assn. v Chu*, 64 NY2d 379, 383 [1985], *appeal*

---

1. Skrypek claims that he is no longer a State Trooper because he resigned. Indeed, two days before the hearing on the misconduct charges alleged against him, Skrypek submitted a letter of resignation. However, in adopting the Hearing Board's findings and dismissing Skrypek, Bennett, "decline[d] to approve his memorandum of resignation."

2. The lack of a justiciable issue implicates the subject matter jurisdiction of a court (*see Matter of New York State Inspection, Sec. & Law Enforcement Empls., Dist. Council 82, AFSCME, AFL-CIO v Cuomo*, 64 NY2d 233, 241 n 3 [1984]; *Morrison v Budget Rent A Car Sys.*, 230 AD2d 253, 258-259 [1997]), and subject matter jurisdiction can be raised at any time (*see Editorial Photocolor Archives v Granger Collection*, 61 NY2d 517, 523 [1984]; *Morrison v Budget Rent A Car Sys., supra*).

*dismissed and cert denied* 474 US 803 [1985] [internal quotation marks omitted]; *see New York Pub. Interest Research Group v Carey*, 42 NY2d 527, 531 [1977]). Here, the PBA does no more than raise concerns over the potentially broad and arbitrary manner in which the State Police could theoretically apply this unwritten policy, and such concerns are wholly speculative (*see Schultz v City of Port Jervis*, 242 AD2d 699, 700 [1997]; *Cherry v Koch*, 126 AD2d 346, 351-352 [1987], *lv denied* 70 NY2d 603 [1987]; *see generally New York State Assn. of Nurse Anesthetists v Novello*, 2 NY3d 207, 214 [2004]; *Church of St. Paul & St. Andrew v Barwick*, 67 NY2d 510, 521-522 [1986], *cert denied* 479 US 985 [1986]; *Matter of Le Grand v Goord*, 272 AD2d 650 [2000]; *cf. Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police*, 29 AD3d 68, 70 [2006]).[3] Of note, the PBA points to no specific instance in the last quarter of a century where this policy has indeed been applied arbitrarily and does not take specific issue with the State Police's application of the policy in the cases of Tully and Skrypek. Here, we discern no direct or immediate harm to any member of the State Police.

Nor is this case justiciable by virtue of Tully's and Skrypek's status as plaintiffs. First, their brief to this Court does not raise legal arguments independent of the general claims raised by the PBA. In other words, neither is pursuing the claim that the unwritten policy of the State Police as applied to each of them violated specific rights under 42 USC § 1983 or that the release forms that they were compelled to execute were overly broad. To this end, we are also compelled to point out that only Tully sought reinstatement to his former position, but this precise remedy has not been pursued on appeal. Moreover, neither Tully nor Skrypek commenced a CPLR article 78 proceeding following their respective dismissals and neither seeks to convert the instant matter into a combined CPLR article 78 proceeding/ declaratory judgment action. Thus, the right of either of them

---

3. Indeed, the PBA frames the issue as follows: "Thus, the question to be addressed on this appeal is *not* whether the [State Police] ever can pose a fact pattern in which limited access to medical records is reasonable. Rather, the issue is whether State Troopers retain the right to *prevent* unregulated and discretionary invasions permitted under the current Unwritten Policy and the General 81 Form" (additional emphasis added). The PBA further asserts that members "are *at risk* that the mere accusation of the most minor transgression that Internal Affairs *may* investigate, will result in a blanket waiver of medical confidentiality" (emphasis added).

to seek specific relief, such as reinstatement, at this juncture in this forum is questionable.[4]

In short, before this Court is a general challenge to potential future abuse and misapplication of an unwritten policy and the subject release form. No direct harm has been alleged, much less proven. Given the lack of any evidence that this policy has ever been exercised in an arbitrary or capricious manner, it is far from "reasonably certain that [any] harm will occur if the challenged action [of the State Police] is permitted to continue" (*Police Benevolent Assn. of N.Y. State Troopers, Inc. v Division of N.Y. State Police, supra* at 70).

Crew III, J.P., Mugglin, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

---

4. In any event, were we to review the circumstances surrounding the State Police's implementation of the subject policy in the case of both Tully and Skrypek, we would find its actions entirely reasonable. The conduct of Tully and Skrypek justifiably raised concerns over each member's fitness to serve (and the concomitant safety of the public). Moreover, the release forms that each was requested to sign were limited in time and content to the incidents involving their respective dismissals.