22 P.3d 38

Willy Bernhard BILS, a married man in his individual capacity, Plaintiff/Appellant,

v.

Henry Rex BILS; John Babin; and Babin And Keusink, a professional corporation, Defendants/Appellees.

No. CV–99–0463–PR.

Supreme Court of Arizona, En Banc.

May 2, 2001.

**46**

Louie Carrasco, Tucson, Attorney for Willy Bernhard Bils.

Bury, Moeller, Humphrey & O'Meara, by Gerard R. O'Meara and Andrew J. Petersen, Tucson, Attorneys for Henry Rex Bils, John Babin and Babin and Keusink.

Broening, Oberg, Woods, Wilson & Cass, by Donald Wilson, Jr., and Wendy N. Weigand, Phoenix, Attorneys for Amicus Curiae, Arizona Association of Defense Counsel.

## OPINION

MARTONE, Justice.

### I.

¶ 1 This is a civil action brought by Willy Bils, an Arizona resident, against his brother, Henry Bils, a California resident, Henry's lawyer, John Babin, an Oregon resident, and his law firm, for malicious prosecution, abuse of process, and intentional infliction of emotional distress. The dispute arose out of the probate of their mother's estate initiated by Willy in a California court.

¶ 2 Henry Bils and Babin moved to dismiss this action under Rule 12(b)(2), Ariz. R. Civ. P., for lack of *in personam* jurisdiction. They argued that there were no contacts with Arizona and therefore the minimum contacts requirement of the Due Process Clause was not met. The motion was supported by their affidavits, in which they stated that they were not residents of Arizona, were not physically present in Arizona in connection with any matter arising out of the California probate, and had no contact with Willy Bils in Arizona.

¶ 3 Willy Bils filed a pro per opposition to the motion to dismiss which was supported by his affidavit asserting that John Babin on two separate occasions mailed him copies of papers filed in the California probate proceeding. Opposition to Motion to Dismiss at 8–9; Affidavit of Willy Bils, Feb. 14, 1997, at 2–3, ¶ 6.

¶ 4 Henry Bils and Babin filed a reply noting that under the California Probate Code, notice must be given to a devisee as well as the lawyer representing that devisee. Opposition to Defendant's Reply to Motion to Dismiss, Feb. 27, 1997, at 2–3, ¶ 6.

¶ 5 The trial court granted the motion to dismiss. There followed a confusing array of filings by the pro per Willy Bils.

¶ 6 The court of appeals reversed by memorandum decision. *Bils v. Bils*, 2CA–CV–98–0023 (Sept. 23, 1999). Believing that the court of appeals erred, we granted review. Rule 23(c)(3), Ariz. R. Civ.App. P.

### II.

¶ 7 Henry Bils and Babin argue that the court of appeals has read the minimum contacts requirement right out of the Due Process Clause. They claim that the court of appeals has read *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), too broadly. They further contend that Division Two took a wrong turn when it decided *Bils v. Nixon, Hargrave, Devans & Doyle*, 179 Ariz. 523, 880 P.2d 743 (App.1994), which involved the same Willy Bils.

¶ 8 In contrast, Willy Bils argues that *Calder* should be construed to mean that "[w]hen an Arizona plaintiff seeks redress in an Arizona court for an intentional tort committed by a foreign defendant, it is certainly not the number of the foreign actor's contacts with the plaintiff in Arizona that determines personal jurisdiction; instead, such

jurisdiction is determined by the impact which the tortfeasor's intentional acts have on the plaintiff in Arizona—that is, the 'effects' which plaintiff suffers in the state where he lives." Appellant/Respondent's Supplemental Brief at 9. Willy Bils does not argue that the service of two documents on him in Arizona were sufficient minimum contacts at all. Instead, he argues that "[r]espondent alleged the 'effects' of Petitioner's intentional acts, and provided extensive supportive evidence for such through sworn affidavits. . . . This was all that respondent need have done for the superior court to assert jurisdiction over petitioners." *Id.* at 10.

¶ 9 But *Calder* does not support Willy Bils' expansive view. Calder was the president and editor of the *National Enquirer.* He and a reporter were sued in California by a California citizen claiming she had been libeled in an article written and edited in Florida. The *Enquirer* published a national weekly newspaper from Florida with a circulation of over five million. About 600,000 copies were sold in California.

 ¶ 10 In affirming jurisdiction in California, the Supreme Court noted that the Due Process Clause of the Fourteenth Amendment permits *in personam* jurisdiction over a defendant in any state with which the defendant has "certain minimum contacts . . . such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " 465 U.S. at 788, 104 S.Ct. at 1486 (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)). The Court stated that, in judging minimum contacts, a court properly focuses on the relationship among the defendant, the forum, and the litigation. The allegedly libelous story concerned the California activities of a California resident. "In sum," the Court said, "California is the focal point both of the story and of the harm suffered." *Id.* at 789, 104 S.Ct. at 1486. The Court noted that this was not untargeted negligence, but intentional action "expressly aimed at California." *Id.* at 789, 104 S.Ct. at 1487. The Court went on to say:

> Petitioner South wrote and petitioner Calder edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in their article.

*Id.* at 789–90, 104 S.Ct. at 1487.

¶ 11 *Calder* is a far cry from what we have here. Willy Bils was an active, willing participant in a will contest in California. His substantive allegations against the defendants are based on his receipt in Arizona of notice of challenges to his allegations in the California action. All of the defendants' underlying conduct, i.e., creation of the pleadings, occurred in California and Oregon. These defendants did not aim anything at Arizona. The only connection Arizona has to this case is that the plaintiff is a resident of Arizona. Babin only served him with filings in connection with California litigation. In one instance, California law required the service. Cal. Prob.Code §§ 1206(a)(2), 1214. In the other (the notice of appeal), it is a common courtesy to give as much notice as possible. In contrast to *Calder,* based upon the affidavits in support of and in opposition to the motion to dismiss, there is no way that the evidence would support a finding that these defendants expressly aimed anything at plaintiff in Arizona knowing that it would harm him. Thus, under no set of facts could it be said that Henry Bils and Babin could reasonably have anticipated being haled into court in Arizona.

¶ 12 This is not the first case in which the plaintiff Willy Bils brought an action against out-of-state defendants alleging *in personam* jurisdiction in Arizona. He prevailed in *Bils v. Nixon, Hargrave, Devans & Doyle,* 179 Ariz. 523, 880 P.2d 743 (App.1994). We need not decide the propriety of the opinion in that case. We note only that review was not sought here and, even if correctly decided, the defendant there at least called an Arizona resident from out of state seeking information that could be used unlawfully against the plaintiff. There, arguably, the defendant invaded the plaintiff's right to privacy in

Arizona. But not even that expansive reading of *Calder* would cover the case before this court. Here we are faced with notice of legal claims in a foreign proceeding in which the plaintiff was a willing participant. The defendants aimed nothing at the plaintiff in Arizona. We reject the argument of Willy Bils, shared by the court of appeals, that an intentional tort that causes harm to an Arizona resident will always be sufficient to confer *in personam* jurisdiction on the Arizona courts. Under the Constitution of the United States, that is where the analysis begins, but is not where it ends.

### III.

¶ 13 For the foregoing reasons, we vacate the memorandum decision of the court of appeals, and affirm the judgment of the superior court. Our disposition moots other issues presented for review.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, RUTH V. McGREGOR, Justice.

FELDMAN, J., dissenting.

¶ 14 Willy Bils claims Arizona courts can properly exercise personal jurisdiction over the out-of-state defendants in this intentional tort action under the "effects" doctrine of *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). The majority states that "*Calder* does not support Willy Bils' expansive view" of jurisdiction. Opinion at ¶ 9. Although *Calder* may not support Willy's contention that he need only "allege[ ] the 'effects' of Petitioners' intentional acts, and provide[ ] extensive supportive evidence for such through sworn affidavits," given the allegations of Willy's complaint, *Calder* supports jurisdiction in this case. Willy's complaint for damages alleges several intentional torts; like *Calder,* the case was dismissed on a Rule 12.b.2 motion.[1] Thus, all allegations of the complaint must be deemed true. *Luchanski v. Congrove,* 193 Ariz. 176, 179, 971 P.2d 636, 639 (App.1998); *see also Citizens'*

*Comm. for Recall of Jack Williams v. Marston,* 109 Ariz. 188, 192, 507 P.2d 113, 117 (1973).

¶ 15 In *Calder,* the United States Supreme Court held that the minimum contacts requirement in an intentional tort action is satisfied when the nonresident tortfeasor expressly aims its tortious conduct at the forum and the plaintiff suffers the brunt of the harm in the forum. 465 U.S. at 788–89, 104 S.Ct. at 1486–87. In such circumstances, the forum can be said to be the focal point of both the tortious activity and the harm suffered. *Id.* This jurisdictional analysis is known as the "effects" test and has been interpreted to require that, to establish jurisdiction, a plaintiff must demonstrate the following:

> (1) The defendant committed an intentional tort; (2) The plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; (3) The defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity.

*IMO Industries, Inc. v. Kiekert AG,* 155 F.3d 254, 265–66 (3rd Cir.1998). We reached a similar result in Arizona even before *Calder. See Pegler v. Sullivan,* 6 Ariz.App. 338, 342, 432 P.2d 593, 597 (1967).

¶ 16 To meet his burden of proof under Rule 12.b.2, Willy need only make out a prima facie case for jurisdiction. *A. Uberti & C. v. Leonardo,* 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995); *see also MacPherson v. Taglione,* 158 Ariz. 309, 312, 762 P.2d 596, 599 (App.1988); 2 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.31[5] (3d ed.1999). Accepting, as we must at this stage of the case, that the facts alleged by Willy are true, I conclude that he has successfully made a prima facie case. *Rollin v. William V. Frankel & Co.,* 196 Ariz. 350, 352, 996 P.2d 1254, 1256 (App.2000) (citing *A. Uberti & C.,* 181 Ariz. at 567, 892 P.2d at 1356). Willy alleges that, by filing the *in terrorem* action, defendants committed the

---

**1.** Following California procedure, the *Calder* trial judge quashed service of process. *Calder,* 465 U.S. at 784–85, 104 S.Ct. at 1484.

intentional torts of abuse of process, malicious prosecution, and intentional infliction of emotional distress. He claims to have suffered harm from these various intentionally tortious acts while living in the forum state of Arizona. He further asserts that defendants knew he was an Arizona resident and knowingly filed unsupported legal claims with the intent of causing him harm in Arizona. It is that harm itself, and not just the required mailing of the legal pleadings giving notice of the action, claims Willy, that was expressly aimed at Arizona. Of course, without some type of contact to Arizona, a lawsuit filed in a different state does not give Arizona jurisdiction to entertain a second action spawned from that out-of-state litigation. But because the harm and the mailings that accomplished it were purposefully aimed at Arizona, argues Willy, they serve as legitimate contacts supporting jurisdiction.

¶ 17 Based on Willy's allegations, I cannot agree with the majority's statement that "[t]hese defendants did not aim anything at Arizona" and "there is no way that the evidence would support a finding that these defendants expressly aimed anything at plaintiff in Arizona knowing that it would harm him." Opinion at ¶ 11. The affidavits filed with defendants' motion to dismiss merely establish that defendants were never physically present in Arizona. No evidence has been received to rebut Willy's allegations, and we have nothing but the facts alleged by Willy, which at this stage we must take as true, that defendants did aim something at Arizona—they knowingly aimed the harm from their tortious conduct at him in Arizona. Defendants knew and intended that the mailings giving notice of the unsupported filings, be they required under California probate procedural rules or not, would harm Willy here. It should be pointed out that, although defendants challenged Arizona's jurisdictional basis by claiming a lack of minimum contacts, they did not refute Willy's claims that the filings were intended to harm Willy in Arizona. Indeed, when defendants address Willy's claim, they state "if abuse of process occurred, this abuse occurred in California and not in Arizona." Opposition to Defendants' Reply to Motion to Dismiss, filed February 27, 1997, at 8.

¶ 18 Defendants are correct when they say the abuse occurred in California. But the facts, as we must take them, are that the effects of the abuse were intended to and did cause damage *in* Arizona. If I shoot a rocket from California, knowing it will land and cause damage in Arizona, no one would argue that Arizona's courts lack jurisdiction when the rocket successfully completes its intended mission. *Calder*, a defamation case, makes intentionally-published words the equivalent of that hypothetical rocket. 465 U.S. at 789–90, 104 S.Ct. at 1487. Within the context of the specific facts of that case, the *Calder* Court unanimously recognized that:

> [P]etitioners are not charged with mere untargeted negligence. Rather, *their intentional, allegedly tortious, actions were expressly aimed at California*. Petitioner South wrote and petitioner Calder edited an article they knew would have a potentially devastating impact upon respondent. And *they knew that the brunt of that injury would be felt by respondent in the State in which she lives* and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article. *An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause injury in California.*

*Id.* (citations omitted, emphasis added).

¶ 19 Willy must have read *Calder* because his complaint is explicit in alleging the jurisdictional requirements emphasized in the quote above. Here, as in *Calder*, defendants "are not charged with mere untargeted negligence" but with intentional acts aimed at harming Willy in Arizona. In *Calder*, the defamatory words eventually reached California; in the present case, the abusive words and papers eventually were served on Willy in Arizona. The majority states that "under no set of facts could it be said that Henry Bils and Babin could reasonably have anticipated being haled into court in Arizona." Opinion at ¶ 11. But *Calder* tells us a tortfeasor who knowingly aims false words

at a nonresident with the intent to cause harm in the latter's place of residence should reasonably anticipate being called into court in the foreign state to answer for his actions. 465 U.S. at 790, 104 S.Ct. at 1487.

¶ 20 Our court of appeals reached a similar result in *Bils v. Nixon, Hargrave, Devans & Doyle*, in which it found that the jurisdiction of Arizona courts existed over New York lawyers whose misuse in New York of an Arizona resident's credit information invaded the privacy of that resident. 179 Ariz. 523, 526, 880 P.2d 743, 746 (App.1994). Although *Bils v. Nixon et al.* supports Willy's interpretation of *Calder*, the majority attempts to sidestep the case by distinguishing between a telephone call from New York that "arguably" invaded the plaintiff's right to privacy and the mailing of pleadings from a legal action filed for the sole purpose of causing emotional distress to Willy in Arizona. Opinion at ¶ 12. I see no difference. How can receipt of a telephone call be sufficient to support jurisdiction while service of legal pleadings cannot? The jurisdictional holding in *Bils v. Nixon et al.* was based on the court's perception that an action for invasion of the right to privacy is injury to the plaintiff's sensibilities and a finding that because plaintiff's "residence is in Arizona ... so are his 'sensibilities.' " *Id.* at 526, 880 P.2d at 746. The court went on to promulgate the rule that governed *Calder* and that also should govern this case:

> Accordingly, the only place an "event" can occur constituting a violation of appellant's right to privacy is Arizona. Because the alleged conduct of appellees was intentionally directed at an Arizona resident and was calculated to cause injury to him here, their contacts were sufficient to confer personal jurisdiction.

*Id.*

¶ 21 Nor can the requirement of the California probate code that defendants mail a copy of their pleadings to other devisees and their attorneys affect the present analysis. Jurisdiction is conferred because the mailings were the means by which the harm was accomplished in Arizona. Defendants knowingly filed improper actions intending that their acts cause damage to Willy, they had certain knowledge that the legal papers would be served on Willy in Arizona, and they knew that Willy's emotional distress would be felt in Arizona. Like *Calder* 's defamatory words eventually reaching California, the mailing, even though required, serves as the minimum contact to support jurisdiction over intentional torts that caused and were intended to cause harm in Arizona. Forcing a tortfeasor to defend his actions in such a situation does not, in my opinion, "offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

¶ 22 Intuitively, one feels this may be a frivolous case on the merits. But this court must decide the cases brought to it by analysis, not intuition. At this stage, whether Willy's intentional tort claims have any merit is not for us to decide. Nor is it for the trial court to decide within the context of a Rule 12.b.2 motion to dismiss for lack of personal jurisdiction. Because the facts Willy has alleged provide sufficient grounds to establish jurisdiction as a prima facie matter, I agree with our court of appeals that the judgment of dismissal should be reversed and the case remanded for further proceedings. Therefore, I must dissent.