212 P.3d 890

Jimmie D. HOLLAND,
Plaintiff/Appellant,

v.

Michael Anthony HURLEY and Jane Doe Hurley, husband and wife,
Defendants/Appellees.

No. 2 CA–CV 2008–0126.

Court of Appeals of Arizona,
Division 2, Department A.

May 19, 2009.

Barton & Storts, P.C. By Brick P. Storts, III, and Robert McCright, Tucson, Attorneys for Plaintiff/Appellant.

Martin & Ferrier, P.C. By Robert M. Ferrier, Tucson, Attorneys for Defendants/Appellees.

## OPINION

PELANDER, Chief Judge.

¶ 1 This case presents a personal-jurisdiction issue of first impression in Arizona arising from plaintiff/appellant Jimmie Holland's Internet purchase of a used automobile through the online auction site eBay. The trial court dismissed for lack of personal jurisdiction Holland's action for damages

against the out-of-state eBay seller, defendant/appellee Michael Hurley. Holland challenges that ruling and also argues the court abused its discretion by refusing to stay its ruling on Hurley's motion to dismiss to give Holland an opportunity to conduct discovery relating to the question of jurisdiction. Although the case presents a close question on the jurisdiction issue, we affirm.

## Background

¶ 2 On appeal from a dismissal pursuant to Rule 12(b)(2), Ariz. R. Civ. P., we view the facts bearing on jurisdiction in the light most favorable to the plaintiff. *Rollin v. William V. Frankel & Co.*, 196 Ariz. 350, ¶ 5, 996 P.2d 1254, 1256 (App.2000). We consider the pleadings and any affidavits filed in support of or opposition to the motion to dismiss, and we "accept[ ] all material facts as alleged by the non-movant as true." [1] *G.T. Helicopters, Inc. v. Helicopters, Ltd.*, 135 Ariz. 380, 382, 661 P.2d 230, 232 (App. 1983). In 2007, Holland, an Arizona resident, purchased for $15,100 a 1976 Cadillac sedan from Hurley, a Michigan resident, through eBay. At an additional cost, Holland arranged to have the car transported to Tucson from Michigan. When the vehicle arrived in Arizona, it required repairs, and Holland determined its condition did not match Hurley's representations and description of the vehicle in his eBay listing.

¶ 3 Holland filed this action against Hurley in Pima County Superior Court, claiming damages of $16,827 "[a]s a direct and proximate result of [Hurley's] negligence," and seeking judgment "for losses he incurred in the purchase of the Cadillac." In his answer, Hurley asserted the court "lack[ed] personal jurisdiction" over him because he had not "had sufficient contact with the State of Ari-

zona to subject [him] to jurisdiction." Several months later, Hurley moved to dismiss the case on that basis pursuant to Rule 12(b)(2).[2] After a hearing, the trial court granted the motion to dismiss, and Holland then moved for reconsideration. After Holland timely appealed from the order of dismissal, the court denied his motion for reconsideration.

## Discussion

### I. Personal jurisdiction

¶ 4 "Once the defendant has moved for dismissal for lack of jurisdiction, the plaintiff has the burden of establishing that jurisdiction is proper." *G.T. Helicopters, Inc.*, 135 Ariz. at 382, 661 P.2d at 232; *see also Rollin*, 196 Ariz. 350, ¶ 8, 996 P.2d at 1256. To meet "the burden of establishing the existence of personal jurisdiction," a plaintiff "cannot 'simply rest on the bare allegations of the complaint, but rather [is obliged] to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Macpherson v. Taglione*, 158 Ariz. 309, 311–12, 762 P.2d 596, 598–99 (App.1988), *quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir.1977) (alteration in *Macpherson* ). "We review de novo a dismissal for lack of in personam jurisdiction and 'simply look to the non-moving party to make a prima facie showing of jurisdiction.'" *A. Uberti & C. v. Leonardo*, 181 Ariz. 565, 569, 892 P.2d 1354, 1358 (1995), *quoting Barone v. Rich Bros. Interstate Display Fireworks Co.*, 25 F.3d 610, 612 (8th Cir.1994); *see also Macpherson*, 158 Ariz. at 312, 762 P.2d at 599 ("The plaintiff may meet his burden of proof on a Rule 12(b)(2) motion by a prima facie showing that jurisdiction was conferred by service under a long arm statute.").

---

1. We note with disapproval that Holland's statement of facts in his opening brief contains no citations to the record, contrary to the requirement in Rule 13(a)(4), Ariz. R. Civ.App. P. Therefore, we disregard that portion of the brief and refer instead to his factual allegations set forth in the record below. *See Flood Control Dist. v. Conlin*, 148 Ariz. 66, 68, 712 P.2d 979, 981 (App.1985).

2. Although Hurley previously raised a personal jurisdiction defense in his answer, his subsequent

motion to dismiss on that ground, made pursuant to Rule 12(b)(2), arguably was untimely. *See* Ariz. R. Civ. P. 12(b) (motion raising personal-jurisdiction defense "shall be made before pleading if a further pleading is permitted"). Even assuming that is so, however, Holland "waived [any] waiver argument" by failing to raise the issue below or on appeal. *Pavlik v. Chinle Unified Sch. Dist. No. 24*, 195 Ariz. 148, ¶ 28, 985 P.2d 633, 640 (App.1999); *cf.* Ariz. R. Civ. P. 12(h).

¶ 5 Arizona courts "may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States." Ariz. R. Civ. P. 4.2(a); *see also Uberti,* 181 Ariz. at 569, 892 P.2d at 1358 (because "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution," "jurisdictional issue ... hinges on federal law"). For a state to have personal jurisdiction over a nonresident defendant, the defendant must "have sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Williams v. Lakeview Co.,* 199 Ariz. 1, ¶ 6, 13 P.3d 280, 282 (2000), *citing Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Such jurisdiction may be either general or specific and, in either type, " 'the constitutional touchstone remains whether the defendant purposefully established "minimum contacts" in the forum State.' " *Id., quoting Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). A determination of whether minimum contacts exist involves a qualitative, rather than quantitative, analysis. *See Meyers v. Hamilton Corp.,* 143 Ariz. 249, 253, 693 P.2d 904, 908 (1984). · But a defendant's "isolated or sporadic contacts with this state will not suffice" to confer personal jurisdiction. *Id.* at 252, 693 P.2d at 907.

¶ 6 "General jurisdiction applies only when the defendant has 'substantial' or 'continuous and systematic' contacts with Arizona." *Austin v. CrystalTech Web Hosting,* 211 Ariz. 569, ¶ 17, 125 P.3d 389, 394 (App.2005), *quoting Batton v. Tenn. Farmers Mut. Ins. Co.,* 153 Ariz. 268, 270, 736 P.2d 2, 4 (1987), *quoting Helicopteros Nacionales v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *see also Williams,* 199 Ariz. 1, ¶ 6, 13 P.3d at 282. Holland apparently concedes that Hurley "has no agents, no physical presence, no offices, and no property within Arizona." *Uberti,* 181 Ariz. at 569, 892 P.2d at 1358. Therefore, Holland correctly acknowledges that Hurley is not subject to Arizona's general jurisdiction. *See*

*Williams,* 199 Ariz. 1, ¶ 6, 13 P.3d at 282 ("The level of contact required to show general jurisdiction is quite high.").

¶ 7 Holland, however, contends Arizona has specific jurisdiction over Hurley. As our supreme court has stated:

When a defendant's activities in the forum state are not so pervasive as to subject it to general jurisdiction, the court may still find specific jurisdiction if: (1) the defendant purposefully avails himself of the privilege of conducting business in the forum; (2) the claim arises out of or relates to the defendant's contact with the forum; and (3) the exercise of jurisdiction is reasonable.

*Id.* ¶ 7; *see also Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414, 416 (9th Cir.1997).

¶ 8 As in *Williams,* courts sometimes speak generally of "purposeful availment" as the first prerequisite for specific jurisdiction. *See Williams,* 199 Ariz. 1, ¶ 7 & n. 2, 13 P.3d at 282 & 283–84 n. 2. But both federal and Arizona courts "have refined this [first element] to mean whether [the defendant] has either (1) 'purposefully availed' himself of the privilege of conducting activities in the forum, or (2) 'purposefully directed' his activities toward the forum." *Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1155 (9th Cir.2006), *quoting Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir.2004); *see also Uberti,* 181 Ariz. at 570, 892 P.2d at 1359 ("The 'substantial connection,' between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.*"), *quoting Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (O'Connor, J.) (plurality opinion); *Cohen v. Barnard, Vogler & Co.,* 199 Ariz. 16, ¶ 9, 13 P.3d 758, 760 (App.2000) (recognizing defendant's purposeful direction of activities at Arizona residents as one means of establishing specific jurisdiction); *Rollin,* 196 Ariz. 350, ¶ 13, 996 P.2d at 1258 (" 'The defendant must also have *purposefully* directed his conduct or activities at the forum State.' "), *quoting Hoskinson v. California,* 168 Ariz. 250, 253,

812 P.2d 1068, 1071 (App.1990). Although courts "sometimes use the phrase 'purposeful availment' to include both purposeful availment and direction, 'availment and direction are, in fact, two distinct concepts.'" *Pebble Beach Co.*, 453 F.3d at 1155, *quoting Schwarzenegger*, 374 F.3d at 802.

¶ 9 In urging that Arizona has specific jurisdiction over Hurley, Holland does not expressly differentiate between purposeful availment and purposeful direction. Despite merging the two concepts, he apparently contends both of those alternative standards are met in this case. He argues "the first prong of the specific jurisdiction test is satisfied, because [Hurley] used the eBay website to purposefully avail himself of the privilege of transacting business in Arizona." According to Holland, "[I]nternet transactions require a more nuanced definition of purposeful availment under the first prong of the *Williams* test to take into consideration an [I]nternet seller's incredible marketing power." Holland also asserts Hurley's "use of the interstate juggernaut eBay to market his automobile must be viewed as a savvy marketing enterprise that was, in itself, the purposeful direction of his product into Arizona."

¶ 10 In evaluating the first prerequisite of specific jurisdiction, we initially address whether Holland made a prima facie showing that Hurley had "purposefully avail[ed] himself of the privilege of conducting business in [Arizona,]" *Williams*, 199 Ariz. 1, ¶ 7, 13 P.3d at 282, or had purposefully directed his activities at Arizona. *Rollin*, 196 Ariz. 350, ¶ 13, 996 P.2d at 1257–58. In doing so, we focus on the specific facts of record to determine if "personal jurisdiction would comport with 'fair play and substantial justice.'" *Williams*, 199 Ariz. 1, ¶ 8, 13 P.3d at 283, *quoting Burger King Corp.*, 471 U.S. at 486, 105 S.Ct. 2174.

¶ 11 "Evidence of availment is typically action taking place in the forum that invokes the benefits and protections of the laws in the forum." *Pebble Beach Co.*, 453 F.3d at 1155. "To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have 'performed some type of affirmative conduct which allows or promotes the transaction of business

within the forum state.'" *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir.2008), *quoting Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir.1990) (internal quotation marks and citation omitted in *Boschetto* ). In contrast, "[e]vidence of [purposeful] direction generally consists of action taking place outside the forum that is directed at the forum." *Pebble Beach Co.*, 453 F.3d at 1155. And,

> [a]lthough specific jurisdiction may arise without the defendant ever setting foot in the forum state, and may arise incident to a single act directed to the forum, it does not arise from the plaintiff's or a third party's unilateral activity or from the nonresident defendant's mere foreseeability that a claim may arise.

*Williams*, 199 Ariz. 1, ¶ 7, 13 P.3d at 282; *see also Boschetto*, 539 F.3d at 1017 ("[T]he formation of a contract with a nonresident defendant is not, standing alone, sufficient to create jurisdiction.").

¶ 12 Citing *Uberti*, Holland maintains Hurley did not have to "purposely direct[ ] his actions toward Arizona" to be subject to Arizona's jurisdiction. Rather, he argues, it was sufficient that Hurley "directed his actions toward each and every state when he placed the Cadillac for sale on eBay." Holland further contends Hurley's "purposeful direction of his product via the [I]nternet to Arizona consumers—and to consumers in every state in the union—put him on notice that he might reasonably expect to be subject to suit in Arizona, or any other state from which an eBay bidder might ha[il]." In other words, as Holland urged at oral argument in this court, Hurley's use of eBay to market and sell goods should potentially subject him to personal jurisdiction in all fifty states. We do not read *Uberti* as supporting either that broad proposition or a finding of specific jurisdiction here.

¶ 13 In *Uberti*, an Italian gun manufacturer made and distributed a replica of a handgun popular in the American West in the nineteenth century. 181 Ariz. at 567, 571–73, 892 P.2d at 1356, 1360–62. Because the defendant manufacturer was an international seller of firearms and had knowingly directed its goods at the United States as a whole, our

supreme court ruled Arizona's exercise of jurisdiction did not require a showing that the defendant had a "specific intent to market the gun in Arizona." *Id.* at 573, 892 P.2d at 1362. Rather, "[a]n intent to sell across America [was] enough." *Id.*

¶ 14 Of particular concern to the *Uberti* court was the fact that, if the defendant manufacturer were not subject to Arizona's jurisdiction merely because it had not specifically intended to sell its product in this state or focused its marketing activities toward Arizona in particular, by the same reasoning, it would not be subject to personal jurisdiction in any American court. *Id.* As the court stated, "[d]ue process does not give foreign companies a safe harbor to manufacture goods designed for and shipped to America and at the same time immunize them from the penalties of noncompliance with American safety standards." *Id.* at 574, 892 P.2d at 1363. That concern is not present in this case—Holland could sue Hurley where he resides, in Michigan. And the record does not reflect that Hurley's personal sales activities on eBay or elsewhere bear any resemblance to the defendant's extensive manufacturing, marketing, and sales strategies and activities in *Uberti.* Thus, we do not find *Uberti* controlling on the question of jurisdiction in this case. *See Rollin,* 196 Ariz. 350, ¶ 30, 996 P.2d at 1261 (distinguishing *Uberti* based on absence of similar concerns about lack of any available forum in United States).

¶ 15 Next, Holland urges us to apply "the sliding scale used by the court in *Zippo M[anufacturing] Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119 (W.D.Pa.1997)[,] to evaluate whether a nonresident defendant's minimum contacts via [I]nternet activity in [Arizona] are sufficient to justify the exercise of personal jurisdiction."

Pursuant to *Zippo,* there are generally three levels of interactivity of web sites. These include: (1) purely passive sites that only offer information for the user to access; (2) active sites that clearly transact business and/or form contracts; and (3) hybrid or interactive sites that allow users to exchange information with the host computer. *Dedvukaj v. Maloney,* 447 F.Supp.2d 813, 821 (E.D.Mich.2006); *see also Zippo Mfg. Co.,* 952 F.Supp. at 1124. In considering a website's level of interactivity under *Zippo's* sliding scale approach, "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Zippo Mfg. Co.,* 952 F.Supp. at 1124, 1126 (finding personal jurisdiction in trademark-infringement case where defendant "sold passwords to approximately 3,000 subscribers in Pennsylvania and entered into seven contracts with Internet access providers to furnish its services to their customers in Pennsylvania").

¶ 16 The Ninth Circuit has applied that test in considering Arizona's jurisdiction over the owner of a website. *See Cybersell, Inc.,* 130 F.3d at 419–20 (no jurisdiction when website owner "conducted no commercial activity over the Internet in Arizona" and "post[ed] an essentially passive home page on the web"). But we cannot agree with Holland's assertion that the *Zippo* sliding-scale standard should inform our decision in this case.[3] Unlike the defendant in *Cybersell, Inc.,* who operated an online business offering website construction, 130 F.3d at

---

3. The three technical distinctions *Zippo* identifies do not directly correlate to the policies and issues that determine whether Arizona properly may exercise personal jurisdiction. In addition, the *Zippo* analysis has been criticized because it "creates an 'arbitrary "sliding scale",' 'represents an egregious failure of legal imagination,' and creates 'bizarre incentives' for [I]nternet merchants to make their websites less sophisticated in order to avoid jurisdictional exposure." Recent Case, *Personal Jurisdiction Minimum Contacts Analysis,* 122 Harv. L.Rev. 1014, 1018 (2009), *quoting* Allan R. Stein, *Personal Jurisdiction and the Internet: Seeing Due Process*

*Through the Lens of Regulatory Precision,* 98 Nw. U.L.Rev. 411, 430, 431 (2004). And "[o]ther scholars have criticized Zippo for being difficult to apply and providing little guidance in many cases, thereby generating inconsistent results." *Id., citing* Michael A. Geist, *Is There a There There? Toward Greater Certainty for Internet Jurisdiction,* 16 Berkeley Tech. L.J. 1345, 1348–49 (2001); Brian D. Boone, Comment, *Bullseye!: Why a "Targeting" Approach To Personal Jurisdiction in the E-Commerce Context Makes Sense Internationally,* 20 Emory Int'l L.Rev. 241, 257–59 (2006).

415, Hurley does not own the website in question here, and the record does not show he had any control over its degree of interactivity. *See Boschetto*, 539 F.3d at 1018; *Sayeedi v. Walser*, 15 Misc.3d 621, 835 N.Y.S.2d 840, 845–46 (Civ.Ct.2007).

¶ 17 Nor does the record reflect that an eBay seller of an individual item can control the state of residence of the buyer of that item. *See Winfield Collection, Ltd. v. McCauley*, 105 F.Supp.2d 746, 749 (E.D.Mich.2000) (holding two sales to Michigan resident through eBay insufficient to establish jurisdiction in Michigan over nonresident defendant and noting choice of bidder on eBay is beyond seller's control); *Metcalf v. Lawson*, 148 N.H. 35, 802 A.2d 1221, 1227 (2002) (finding no jurisdiction over nonresident eBay seller when no showing she "was aware she was contracting with a New Hampshire resident until after the transaction was completed"); *cf. Uberti*, 181 Ariz. at 574 n. 8, 892 P.2d at 1363 n. 8 ("Defendant could have avoided the risk of products liability in Arizona by making some affirmative effort to preclude distribution of its products in our state."). As noted earlier, eBay is an online auction site.[4] "[T]he function of an auction is to permit the highest bidder to purchase the property offered for sale, and the choice of that highest bidder is therefore beyond the control of the seller." *Winfield Collection, Ltd.*, 105 F.Supp.2d at 749.

■■■■ ¶ 18 On the other hand, "where the Internet site actually belongs to and is operated by the defendant, the nature of the website has jurisdictional significance because the website allows the defendant to maintain some ongoing contact with the forum state." *Boschetto*, 539 F.3d at 1018. But when, as here, the defendant does not own or control the website, we agree with the Ninth Circuit's conclusion in *Boschetto* that the analysis in *Zippo* and *Cybersell, Inc.* "is largely inapplicable." *Id.* Insofar as they employ such an analysis, the other cases on which Holland relies do not persuade us to find jurisdiction here. *See Dedvukaj*, 447 F.Supp.2d at 816–17, 821–23 (applying *Zippo* analysis and finding jurisdiction when defendant seller conducted eBay business as "MrLister"; displayed marketing statistics; required a warehouse for goods storage; offered toll-free telephone numbers to customers; placed logos, slogans, and materials on the auctions screens; and encouraged viewers to visit seller's "eBay Store," potentially confusing buyers about where "eBay stops and MrLister begins"); *Crummey v. Morgan*, 965 So.2d 497 (La.Ct.App.2007) (stating "use of the eBay website to market and sell [a recreational vehicle] to a Louisiana buyer is, on the *Zippo* sliding scale, more akin to those situations for which a finding of personal jurisdiction is proper").[5]

¶ 19 In contrast to cases in which the defendant owns and controls the website in question, the situation here essentially mirrors that presented in *Boschetto*—that is, "a one-time contract for the sale of a good that involved the forum state only because that is where the purchaser happened to reside." *Boschetto*, 539 F.3d at 1019. As far as the record shows, Hurley's only contact with Ari-

---

4. Without citing anything in the record, Holland refers in his opening brief to information supposedly obtained from eBay's website regarding its "background." But we are reluctant to take judicial notice of website information, particularly when we have not been asked to do so and when the information on a website may change and may or may not pertain to the period of time involved in this case. *See* Ariz. R. Evid. 201; *but cf. Malone v. Berry*, 174 Ohio App.3d 122, 881 N.E.2d 283, 286 (2007) (taking "limited judicial notice" of fact that online website provided forum for buyers and sellers similar to that of eBay). Beyond a description of what makes an eBay seller a "Power Seller," the record does not contain any facts regarding how eBay operates; any rules, regulations, protocols, or other requirements pertaining to its use; or any restrictions, conditions, or other qualifications that may

be placed on the eBay auction process and its participants. Absent any such facts, we cannot say Holland has met his "burden of establishing the existence of personal jurisdiction" by making "a prima facie showing" that such jurisdiction exists. *Macpherson*, 158 Ariz. at 311, 312, 762 P.2d at 598, 599.

5. Both parties improperly cite to various unreported decisions to support their arguments. We do not address or refer to those decisions. *See* Ariz. R. Civ.App. P. (ARCAP) 28(c); *Kriz v. Buckeye Petrol. Co.*, 145 Ariz. 374, 377 n. 3, 701 P.2d 1182, 1185 n. 3 (1985) (ARCAP 28(c) prohibits citation to unpublished federal as well as state court decisions); *Hourani v. Benson Hosp.*, 211 Ariz. 427, ¶ 27, 122 P.3d 6, 14 (App.2005).

zona was Holland's purchase of the vehicle through eBay and some e-mails and telephone calls they had exchanged. Moreover, according to Holland's response to the motion to dismiss below, those other contacts apparently were initiated by Holland, who "sent e[-]mail inquiries to [Hurley] regarding the car." [6] Indeed, Hurley did not deliver the Cadillac to Arizona but, rather, required the buyer to pick it up in Michigan, and Holland arranged to have the car shipped to Arizona.

¶ 20 As Holland points out, however, copies of various eBay documents attached to his motion for reconsideration below show that Hurley has made numerous other sales through eBay, and Hurley acknowledges that fact on appeal. But the record does not show whether any of those sales were to Arizona residents or involved automobiles.[7] And Holland has not alleged that Hurley made any marketing efforts in Arizona or otherwise " 'purposefully directed' " any activities toward this state. *Cybersell, Inc.*, 130 F.3d at 417, *quoting Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir.1995). Nor does the record suggest the parties' transaction here involved anything more than "a 'random' and 'attenuated' contact ... where [a] dispute arose, at least in part, out of the fortuitous contact defendant had with the forum state." *Winfield Collection, Ltd.*, 105 F.Supp.2d at 749.

■ ¶ 21 Although an out-of-state eBay seller might foresee that an Arizona resident may purchase an item offered for sale, that does not mean the seller purposefully direct-

ed the item to Arizona. As our supreme court has said, jurisdiction does not arise "from the non-resident defendant's mere [ability to foresee] that a claim may arise" in the forum state. *Williams,* 199 Ariz. 1, ¶ 7, 13 P.3d at 282; *see also id.* ¶ 15 ("Foreseeability ... does not confer jurisdiction."); *Rollin,* 196 Ariz. 350, ¶ 26, 996 P.2d at 1260.

■ ¶ 22 On the other hand, "[w]here eBay is used as a means for establishing regular business with a remote forum such that a finding of personal jurisdiction comports with 'traditional notions of fair play and substantial justice,' then a defendant's use of eBay may be properly taken into account for purposes of establishing personal jurisdiction." *Boschetto,* 539 F.3d at 1019, *quoting Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154 (citation omitted). Thus, depending on the circumstances in a particular case, it certainly is possible an out-of-state eBay seller could be subject to Arizona's jurisdiction. In this case, however, Holland failed to meet his burden " 'to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.' " *Macpherson,* 158 Ariz. at 312, 762 P.2d at 599, *quoting Amba Mktg. Sys., Inc.,* 551 F.2d at 787.

¶ 23 Still, in urging a finding of "purposeful direction" by Hurley, Holland refers to a statement in *Uberti* that "principles of due process permit suit against [a] Defendant in states where its products cause damage." 181 Ariz. at 573, 892 P.2d at 1362. But we already have found *Uberti* distinguishable and not controlling here. In addition, Holland did not urge below or on appeal the so-

6. Other than a single e-mail from Hurley to Holland, attached to Holland's motion for reconsideration below, the record contains no affidavits, deposition testimony, or other facts relating to any e-mail or telephonic contacts that might have occurred between the parties. Therefore, we find factually unsupported and otherwise unpersuasive Holland's assertion, citing *Cybersell, Inc.*, 130 F.3d at 419, that we should find jurisdiction based on such contacts. *See G.T. Helicopters, Inc.,* 135 Ariz. at 383–84, 661 P.2d at 233–34 (telephone conversations between parties, initiated by plaintiff, did not establish sufficient contacts for jurisdiction); *Coast to Coast Mktg. Co. v. G & S Metal Prods. Co.,* 130 Ariz. 506, 508, 637 P.2d 308, 310 (App.1981) (mail and telephone contacts with out-of-state defendant did "not establish that [it] engaged in any significant pur-

poseful activity with Arizona which would support the exercise of personal jurisdiction over it").

7. Without citing the record, Holland contends in his opening brief that Hurley "had engaged in at least 295 separate transactions as an eBay seller since 1999" and "had attained the status of a 'Power Seller,' which eBay describes as a seller with 'consistent sales volume' who ranks 'among the most successful sellers on eBay in terms of sales and customer satisfaction.' " In his answering brief, also without citing the record, Hurley states that, "during his ten years as a seller on eBay," "he has engaged in 295 separate eBay transactions," only four of which have involved sales of automobiles.

called "effects" test emanating from *Calder v. Jones*, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), and at oral argument in this court specifically acknowledged he was not relying on that test. In *Calder*, the Supreme Court ruled California courts had personal jurisdiction over Florida defendants who had written, edited, and widely distributed in California an allegedly libelous story concerning the California activities of a California resident. *Id.* at 789–91, 104 S.Ct. 1482. Because "California [was] the focal point both of the story and of the harm suffered," the Court noted the defendants' intentional actions were "expressly aimed at California" and were not merely untargeted negligence. *Id.* at 789, 104 S.Ct. 1482. Under those circumstances, the Court concluded the defendants must have " 'reasonably anticipate[d] being haled into court' " in California to answer for the truth of the statements made in their widely disseminated article. *Id.* at 789–90, 104 S.Ct. 1482, *quoting World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

¶ 24 Even under the *Calder* analysis, however, " 'something more' is needed in addition to a mere foreseeable effect" in the forum state. *Pebble Beach Co.*, 453 F.3d at 1156, *quoting Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). The " 'something more' is what the Supreme Court described as 'express aiming' at the forum state." *Bancroft & Masters, Inc.*, 223 F.3d at 1087, *quoting Calder*, 465 U.S. at 789, 104 S.Ct. 1482. Similarly, our supreme court has rejected the broad argument "that an intentional tort that causes harm to an Arizona resident will always be sufficient to confer *in personam* jurisdiction on the Arizona courts," because "that is where the [constitutional] analysis begins, ... not where it ends." *Bils v. Bils*, 200 Ariz. 45, ¶ 12, 22 P.3d 38, 41 (2001); *see also*

*Pebble Beach Co.*, 453 F.3d at 1156, 1157 (British defendant's acts in creating and operating passive, noninteractive website and using "Pebble Beach" in its domain name not "aimed at California and, regardless of foreseeable effect, are insufficient to establish jurisdiction" when defendant engaged in no " 'individualized targeting' " of plaintiff in California), *quoting Bancroft & Masters, Inc.*, 223 F.3d at 1088. In any event, based on the skeletal facts in the record before us and Holland's nonreliance on *Calder* or its progeny, we express no opinion on whether the "effects" analysis might apply or support Holland's jurisdictional argument here.[8]

¶ 25 We do, however, find instructive and pertinent the Ninth Circuit's decision in *Boschetto*. On facts nearly identical to those presented here, the court in that case concluded that "the lone transaction for the sale of one item [also an automobile on eBay] does not establish that [the nonresident defendant seller] purposefully availed [himself] of the privilege of doing business in California." 539 F.3d at 1017. Because the seller's interaction with the forum state was merely a " 'one-shot affair,' " it was insufficient to establish minimum contacts.[9] *Id., quoting CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1265 (6th Cir.1996).

¶ 26 We reach the same conclusion here and find it consistent with the view of most courts across the country. As Holland acknowledged at oral argument, "The majority of jurisdictions that have considered the issue of personal jurisdiction arising out of a single transaction on an auction website such as eBay have found the absence of jurisdiction." *Malone v. Berry*, 174 Ohio App.3d 122, 881 N.E.2d 283, ¶ 19 (2007); *see also Machulsky v. Hall*, 210 F.Supp.2d 531, 545 (D.N.J.2002); *Winfield Collection, Ltd.*, 105 F.Supp.2d at 751; *Metcalf v. Lawson*, 148 N.H. 35, 802 A.2d 1221, 1227 (2002); *Jones v. Munroe*, 2 Misc.3d 24, 773 N.Y.S.2d 498, 498

---

8. The *Calder* analysis generally has been applied to cases in which the defendant allegedly committed an intentional tort. In his complaint, however, Holland sought damages based on Hurley's alleged negligence, rather than any intentional tort. Although Holland also alleged Hurley had made various misrepresentations to him concerning the vehicle, Holland did not adequately plead a claim for common law fraud.

*See* Ariz. R. Civ. P. 9(b); *Linder v. Brown & Herrick*, 189 Ariz. 398, 404–05, 943 P.2d 758, 764–65 (App.1997).

9. Although Holland seeks to distinguish *Boschetto* factually, the record contains no evidence supporting any meaningful distinction.

(Sup.App.2003); *Sayeedi,* 835 N.Y.S.2d at 844–46; *Karstetter v. Voss,* 184 S.W.3d 396, 403–05 (Tex.App.2006).

¶ 27 Although the majority view in similar cases disfavors him, Holland urges us to embrace "an updated understanding of [I]nternet commercial activity in the 21st century to the resolution of jurisdictional questions." According to Holland, "The [I]nternet is by its very nature an ephemeral place of immeasurable dimensions, and has opened new frontiers in commerce that are not adequately addressed by notions of jurisdiction established in a less technological time." "As one commentator has observed, 'Among the exciting opportunities offered by the Internet is the chance to be haled into court in another state.'" *Malone,* 881 N.E.2d at 283, ¶ 15, *quoting* Haig, 2 N.Y. Prac., *Commercial Litigation in New York State Courts* (2d ed.), § 2:28.

¶ 28 Another commentator has noted:

> The [I]nternet has magnified the flaws of the minimum contacts test because cyberspace lacks the territorial boundaries that form the backbone of traditional personal jurisdictional analyses. Websites and e[-]mail allow people to transact business anywhere in the world. Lower courts have struggled when faced with cases involving such transactions, and the Supreme Court has not yet examined personal jurisdiction in the [I]nternet context. Thus, it is not surprising that no uniform test has emerged for personal jurisdiction in [I]nternet cases.

Recent Case, 122 Harv. L.Rev. 1014, 1017–18 (footnotes omitted). Nonetheless, in applauding the analysis in *Boschetto,* that same commentator noted, "Instead of continuing the struggle to create the perfect all-purpose [I]nternet jurisdiction test, the Ninth Circuit offered a reprieve: a way to clarify a portion of the [I]nternet jurisdiction landscape and to remove a potential obstacle to the full realization of the benefits of electronic commerce." *Id.* at 1021; *see also id.* at 1017 ("The traditional minimum contacts test may be flawed and vague, but its familiarity and uniformity provide a means of avoiding the inconsistency and confusion of [I]nternet-specific jurisdictional approaches to [I]nternet commercial transaction cases."). We agree with those observations and, therefore, follow *Boschetto* here.

¶ 29 In sum, Holland failed to establish that Hurley "purposefully avail[ed] himself of the privilege of conducting business in [Arizona]." *Williams,* 199 Ariz. 1, ¶ 7, 13 P.3d at 282; *see also Rollin,* 196 Ariz. 350, ¶¶ 16, 21, 996 P.2d at 1258, 1259. Nor can we say from this record Hurley "intentionally directed [his] activities at [Arizona] or was aware [he] was contracting with a[n] [Arizona] resident until after the transaction was completed." *Metcalf,* 802 A.2d at 1227; *see also Cohen,* 199 Ariz. 16, ¶ 9, 13 P.3d at 760; *Rollin,* 196 Ariz. 350, ¶ 13, 996 P.2d at 1257–58. On the record before us, we also cannot say that "traditional notions of fair play and substantial justice" allow Arizona to exercise jurisdiction over Hurley. *Int'l Shoe Co.,* 326 U.S. at 316, 66 S.Ct. 154. Because Holland's argument fails under the first required element of the jurisdiction test, we need not address the other two elements. *See Boschetto,* 539 F.3d at 1016; *see also Pebble Beach Co.,* 453 F.3d at 1155; *Williams,* 199 Ariz. 1, ¶ 7, 13 P.3d at 282.

## II. Discovery request

¶ 30 Attempting to address the absence of any facts to support his jurisdictional argument, Holland contends "[t]he trial court abused its discretion in denying limited discovery into [Hurley's] online commercial activity to establish a factual basis for the exercise of personal jurisdiction." "[I]n matters of discovery a trial court has broad discretion which will not be disturbed absent a showing of abuse." *Brown v. Superior Court,* 137 Ariz. 327, 331, 670 P.2d 725, 729 (1983); *see also Cohen,* 199 Ariz. 16, ¶ 22, 13 P.3d at 762. Holland's complaint contained no factual allegations relating to personal jurisdiction. For example, he did not allege that Hurley had engaged in a significant number of automobile sales to persons in Arizona or anywhere else. In his opposition to Hurley's motion to dismiss, Holland argued Hurley "was engaged in activity more consistent with the online business of selling vintage automobiles"; in a footnote, Holland asked the trial court to

order "limited discovery on [that] issue" if the court viewed it as dispositive. But he cited no authority for that request, did not explain why he had not or could not have conducted any discovery in the case before that point, and did not describe the type of information he would seek if discovery were allowed. *Cf.* Ariz. R. Civ. P. 56(f); *Phil W. Morris Co. v. Schwartz,* 138 Ariz. 90, 94, 673 P.2d 28, 32 (App.1983). Nor did Holland clearly seek a postponement of the hearing on Hurley's motion to dismiss in order to conduct any necessary discovery. *See Phil W. Morris Co.,* 138 Ariz. at 93, 673 P.2d at 31.

¶ 31 After a hearing on Hurley's motion to dismiss, the trial court granted the motion without mention of Holland's passing request for discovery. Following that dispositive ruling, Holland moved for reconsideration, arguing that, because the trial court's decision had turned, at least in part, on the lack of evidence to show Hurley had engaged in an extensive, online automobile sale enterprise, Holland was entitled to discovery on the matter. The trial court ultimately denied the motion for reconsideration.

¶ 32 Despite having had nearly three months between the time Hurley filed his answer, in which he asserted lack of personal jurisdiction, and the time Hurley moved to dismiss, Holland apparently engaged in no discovery related to jurisdiction. And, in the nearly three months between the filing of Hurley's motion to dismiss and the hearing on that motion, still Holland apparently undertook no discovery on that topic. In view of Holland's failure to take any action to discover the facts necessary to establish personal jurisdiction, despite Hurley's clear indication he was challenging Arizona's jurisdiction over him, we cannot say the trial court abused its discretion in denying Holland's untimely request to conduct discovery. *See Cohen,* 199 Ariz. 16, ¶¶ 23–24, 13 P.3d at 762–63 (trial court did not abuse its discretion in denying plaintiff's belated request for discovery on personal jurisdiction issue); *see also McGovern v. McGovern,* 201 Ariz. 172, ¶ 6, 33 P.3d 506, 509 (App.2001) (we review for abuse of discretion trial court's ruling on motion for reconsideration); *cf. Phil W.*

*Morris Co.,* 138 Ariz. at 94, 673 P.2d at 32 (after granting summary judgment, trial court acts within its discretion in rejecting new evidence presented in motion for reconsideration absent showing additional facts could not have been discovered and produced earlier with exercise of reasonable diligence).

### Disposition

¶ 33 The judgment of the trial court is affirmed.

CONCURRING: JOSEPH W. HOWARD, Presiding Judge.

ESPINOSA, Judge, specially concurring.

¶ 34 I concur with my colleagues but add this comment to emphasize that, in this age of increasingly widespread Internet commerce, our decision does not foreclose the possibility that Arizona could exercise jurisdiction over an eBay seller under appropriate circumstances. A seller who markets his wares with an "intent to sell across America" by utilizing a nationally promoted and nationally available forum such as eBay may well be explicitly directing a purposeful activity into all fifty states. *See Uberti,* 181 Ariz. at 573, 892 P.2d at 1362. Indeed, that would appear to be the whole point of utilizing the boundless eBay cyber marketplace. But that conclusion cannot be definitively reached from the bare record presented here and thus cannot support a determination that the trial court erred. As noted in footnotes four and six of our decision, given the skeletal facts we have been provided, Holland simply has not met his burden of establishing a prima facie case for the existence of personal jurisdiction.